### R. F. HINSON v. ELY WALKER & CO.

(Case No. 1911)

1. CHARGE.—See statement of facts for charge held correct.
2. EVIDENCE—VENDOR—DECLARATIONS AFTER SALE.—It is well settled that the declarations of a vendor made after the sale, and without the presence or knowledge of the vendee, cannot be introduced to defeat the vendee's title to the property conveyed. (Thompson v. Herring, 27 Tex., 282; Carleton v. Baldwin, 27 Tex., 275, etc.)

3. SAME—LOAN.—The rule applies to other transactions as well as sales, and the declarations of a lender, made after the loan and without the presence or knowledge of the borrower, can not be introduced to prove that the loan was simulated.

4. PURCHASE MONEY—VENDEE—SIMULATED LOAN.—If a party purchase goods with money acquired through a valid loan, the goods are his ; if the loan was simulated to work a fraud, the title to the goods is in the lender.

5. EVIDENCE—AGENT—DECLARATIONS.—Where the acts of an agent may be shown to affect his principal, his declarations relating to the act made while transacting the business, may ordinarily be shown.

6. SAME.—The mere fact that an agent was authorized to buy goods for his principal would not authorize the introduction of declarations made by him, unknown and unauthorized by the principal, to the effect that he (the agent) was the owner of goods then in the store or to be bought. (Story on Agency, 134-139 ; 1 Greenl. Ev., 113, 114.)

7. EVIDENCE—DECLARATION—FRAUD.—A stock of goods was levied on as property of S., and a claim bond was filed by defendant ; claimant alleged that the goods were his, but admitted that he borrowed the money with which they were bought from S. *Held:*

(1) That it was admissible to prove declarations of S., made prior to the time claimant obtained the money from him, tending to show a fraudulent intention on the part of S. to place his means beyond the reach of his creditors.

(2). The jury could then determine from the other evidence whether the claimant had knowledge of such fraudulent purpose. (Chase *v.* Chase, 105 Mass.; Gillet *v.* Phelps, 12 Wis.; Chase *v.* Walters, 28 Iowa, etc.)

(3) If the other evidence failed to show that claimant knew of the fraudulent intent, the mere existence of that intent could not affect his rights.

(4) It was inadmissible, and calculated to prejudice the jury, to introduce evidence that S., prior to his loan to claimant, offered to invest money in a certain business, and to put claimant in as clerk to look after his interest, claimant not being shown to have been acquainted with the proposition.

APPEAL from Red River.    Tried below before the Hon. D. H. Scott.

On the 19th of February, 1884, the appellees, Ely Walker & Co., instituted a suit in the District Court of Red River county against D. P. Smith, on an open account, and at the same time obtained an attachment in said suit, which was levied on the stock of goods, wares and merchandise in the possession of appellant, R. F. Hinson. Hinson claimed the goods, and filed an affidavit and claim bond under the statute for the trial of the right of property. The case was tried on the 25th of May, 1885, and resulted in a judgment for the plaintiffs.

In the second paragraph of the charge the court said: "If you find from the evidence in this case that the property in controversy belonged to D. P. Smith at the date of the levy of attachment offered in evidence, or if you believe from the evidence that D. P. Smith furnished the money to buy said property, and took the title in

defendant's name for the purpose of placing said property beyond the reach of his, D. P. Smith's creditors, or if you find that said property was transferred to defendant by D. P. Smith for the purpose of hindering, delaying or defrauding the creditors of said Smith, and defendant, Hinson, knew the object of such transfer, or had possession of sufficient facts in reference thereto to put a prudent man on inquiry, or to excite the suspicions of a prudent man, then you will find that the property in controversy was the property of D. P. Smith at the date of the levy of attachment, and subject to said attachment."

The fourth paragraph was: "In arriving at the conclusion as to whether or not the transactions between D. P. Smith and defendant, Hinson, were fair and right, or otherwise, you will take into consideration all the facts and circumstances shown by the evidence."

The witness, Harris, testified: "In the early part of January, 1884, I heard a conversation between Smith and my son, Robert Harris. Smith said he had four or five thousand dollars surplus money, and wanted to go in partnership with Harris Bros.; said he would put his brother-in-law, Hinson, in as clerk to look after his interest."

*Sims & McDonald*, for appellant, on the introduction of evidence, cited: Carlton v. Baldwin, 27 Tex., 572; Thompson v. Herring, 27 Tex., 282; Garrahy v. Green, 32 Tex., 202; Schwick v. Nael, Tex. Ct. Rep. for July, 1885, p. 221; Bump on Fraud. Conv., 568.

On the insufficiency of the evidence to sustain the verdict, they cited: Bump on Fraud. Conv., 584; Kerr on Fraud and Mistake, 382, 383; Paxton v. Boyce, 1 Tex., 317.

*Taylor & Chambers*, for appellees, on the introduction of evidence, cited: Carlton v. Baldwin, 27 Tex., 572; Wallace v. Wilcox, 27 Tex., 67; Martel v. Somers, 26 Tex., 559; Bump on Fraud. Conv., 569; Tuttle v. Turner, 28 Tex., 771; Bump on Fraud. Conv., 562, 563; 1 Geenl. Ev., 113.

STAYTON, ASSOCIATE JUSTICE.—The court, in the second paragraph of the charge, but presented the several phases of the case arising under the evidence of which, if any were found to exist, the plaintiffs were entitled to a judgment. They all looked to the question whether the property was subject to seizure and sale, by reason of the fact that as between Hinson and Smith, the property was the property of the latter, or by reason of the fact that it was bought by Hinson with money which Smith had furnished, that it might be invested in property in the name of Hinson and thereby be placed beyond the reach of Smith's creditors, and we see no valid objection to the charge.

The fourth paragraph of the charge was substantially correct, and could not have misled the jury.

The theory of the plaintiffs was that the loan of money by Smith to Hinson was simulated; that in fact the goods were bought with the money of Smith, and were therefore his; and the business carried on, though in the name of Hinson, was the business of Smith.

The theory of the defendant was that the goods were purchased with money which he had in good faith borrowed from Smith, and that the goods were his property and the business his business.

There was no controversy over the fact that the goods were bought with money that at one time belonged to Smith, and it was upon this ground solely that it was claimed they were subject to seizure and sale for his debts.

The real question in the case then depended upon the real character of the money transaction between Smith and Hinson. The record shows that whatever money passed from Smith to Hinson and was invested in goods seized, so passed prior to the time Smith started to St. Louis, really or pretendedly to buy goods for Hinson. Their rights in reference to his money were fixed before that time.

Under this state of facts it becomes necessary to inquire whether the declarations of Smith, made to Moore, were admissible to prove that the goods purchased and to be purchased with the money were the goods of Smith—in effect, to prove that the transaction between Smith and Hinson did not amount to a loan in good faith, but was a simulated transaction between them for the purpose of placing Smith's means beyond the reach of his creditors.

If Smith had admittedly once owned the goods, and had, in form, transferred them subsequently to Hinson, it is clear, under the circumstances existing at the time the declarations were made, that they could not have been used in evidence for the purpose of defeating Hinson's title.

It is well settled that the declarations of a vendor made after a sale, and without the presence or knowledge of the vendee, cannot be received in evidence to defeat the vendee's title to the property conveyed. Thompson v. Herring, 27 Tex., 285; Grooms v. Rust, 27 Tex., 231; Carleton v. Baldwin, 27 Tex., 573; Garrahy v. Green, 32 Tex., 203; Reed v. Herring, 37 Tex., 160; Wait on Fraud. Conv., 278; Bump on Fraud. Conv.

We see no reason why the declarations of Smith, made after the money had been loaned to Hinson, and invested in whole or in part in goods, should be received to show that the loan was not real and in good faith. The rule which forbids the admission of the declarations

of the vendor, made after a sale, to defeat a conveyance made by him, extends to all transactions—to the loan of money as to the sale of property, real or personal. The same reasons which forbid its use in the one case forbid it in the other.

The purpose of the evidence of the witness Moore, was to prove by the declarations of Smith that the goods were his. If his, they were so by reason of the fact that the loan of money to Hinson with which the goods were bought, was only simulated; for if the money with which they were purchased was the money of Hinson through a valid loan, then the goods were his.

When the acts of an agent may be shown to affect his principal, his declarations relating to the act made while transacting the business may ordinarily be shown.

The evidence in this case, however, does not show that Smith was authorized to do any act which could have affected the title of Hinson to the goods, and we cannot see that the simple fact that he was authorized to buy goods for Hinson would authorize the introduction of declarations made by him, unknown and unauthorized by Hinson, to the effect that he was the owner of the goods then in store, or to be bought. Story on Agency, 134–139; 1 Greenl. Ev., 113, 114.

The testimony of the witness J. N. Smith related to declarations made by D. P. Smith prior to the time Hinson claims to have borrowed money from him, and these declarations, as well as others found in the record, tend to show a fraudulent intention on the part of D. P. Smith to place his means beyond the reach of his creditors.

This was a matter to be proved by the plaintiffs, and we are of the opinion that it was admissible for this purpose, it being left to the jury to determine from the other evidence offered, whether Hinson had knowledge of such fraudulent purpose at the time he obtained the money. Chase v. Chase, 105 Mass., 388; Bridge v. Eggleston, 14 Mass., 248; Hopkins v. Langton, 30 Wis., 379; Gillet v. Phelps, 12 Wis., 446; Landecker v. Houghtaling, 7 Cal., 392; Chase et al. v. Walters, 28 Ia., 468; Grous v. Steel, 2 La. Ann., 480; Wait on Fraud. Conv., 277.

If the jury were of the opinion that the other evidence in the case did not show that Hinson knew of the fraudulent intent, then proof of its existence on the part of Smith would amount to nothing, in so far as the rights of Hinson were concerned.

Whether the other evidence in the case was sufficient to affect Hinson with knowledge of the fraudulent intent of Smith, it does not become necessary for us to determine.

The testimony of the witness, Harris, related to declarations made

by Smith, not in the presence of Hinson, and not in relation to any matter connected with the question in controversy, which most probably occurred before Hinson received money from Smith, and they in no way served to illustrate any issue in the case.

They were simply hearsay, but calculated to impress upon the jury the idea that the relation of Smith and Hinson to the business afterwards established, and claimed to be the business of Hinson, was in fact that which Smith sought to establish for himself and Hinson with the firm of Harris Bros. There was no evidence whatever that Hinson authorized the proposition made to Harris Bros. by Smith, nor that he had any knowledge of it.

What has been said of the testimony of the witness Moore, applies to the testimony of the witness Holmes.

The other assignments of error need not be considered; but for the errors mentioned the judgment of the court below will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 20, 1885.]