### GEO. E. SHELLEY, TRUSTEE, v. S. F. NOLEN ET AL.

#### Decided February 22, 1905.

**1.—Bankruptcy—Trustee—Fraudulent Conveyance.**

A trustee in bankruptcy derives his right to sue to set aside fraudulent conveyances by the bankrupt from the bankruptcy law alone, and çan not maintain such action except as authorized by the act.

**2.—Same—Action to Set Aside.**

By the Bankruptcy Law of 1898, subdivision e, section 67, the trustee is authorized to sue to set aside fraudulent conveyances by the bankrupt only when made after the passage of the Act, and within four months preceding the filing of the petition in bankruptcy.

Error from the District Court of Travis County. Tried below before Hon. Geo. Calhoun.

*James & Yieser,* for plaintiff in error.

*John Dowell,* for defendant in error Nolen.—The law of this State, at the time of the execution of the deeds sought to be set aside on the ground of fraud, conveying the land involved in this suit, viz., the deed to Corbett Stevens survey to H. C. Nolen by E. W. Herndon, being dated the 26th day or January, 1898, and the deed from H. C. Nolen and wife to Myra Heissner to same land dated the 14th of April, 1898, and the deed to her to the M. D. La Tulla survey being dated the 8th day of February, 1898, as recited in the petition of plaintiffs in this case and as shown by the uncontradicted testimony, did not permit a trustee as representative of another to attack for fraud these deeds on account of the fraud of the party he represented; and the pleading and evidence in this case showed that if the conveyances were fraudulent A. J. Heissner was a party and the main party to it, and that the bankrupt act under which plaintiff was appointed trustee of the estate of A. J. Heissner, bankrupt, only authorizing him to cancel any deed of the bankrupt that a creditor could cancel, was past long since the execution and record of said deeds. The said deed to the M. D. La Tulla survey being recorded on the 15th day of February, 1898, and the said deed to the Corbett Stevens survey being recorded on the 26th day of January, 1898, in the record of deeds of Travis County, Texas, the bankrupt

act under which plaintiff in error was appointed trustee was passed by Congress on the 1st day of July, 1898. Bankrupt Act, approved July 1, 1898, sec. 47, and par. e of sec. 67. Government printed copy, 1898 (copy filed herewith) ; Same sections and subdivisions in Bump & Black on Bankruptcy; Danzey v. Smith, 4 Texas, 415; Wilson v. Trawick, 10 Texas, 435; Chubb v. Johnson, 11 Texas, 477; Fowler v. Stoneum, 11 Texas, 501; Epperson v. Young, 8 Texas, 136; Cobb v. Norwood, 11 Texas, 556; Avery v. Avery, 12 Texas, 57; Connell v. Chandler, 13 Texas, 6; Willis v. Smith, 65 Texas, 656; Wilson v. Demander, 71 Texas, 605; Dittman v. Weiss, 87 Texas, 614.

*Gregory & Batts,* for defendant in error Trautwein.—The judgment of the court is sustained by the fact that the trustee in bankruptcy had no interest in the land in controversy, the transaction by which the title thereon was placed in Myra Heissner having taken place antecedent to the passage of the bankruptcy law, and also antecedent to four months preceding the adjudication in bankruptcy of Jack Heissner. In re Countryman, 9 Am. Bk. Rep., 572 (U. S. Dist. Ct., Northern District of Iowa) ; In re Quackenbush, 102 Fed. Rep., 282; In re Webb (U. S. D. C., N. Y.), 3 Am. Bk. Rep., 204.

EIDSON, Associate Justice.—The statement of the nature and result of the suit in plaintiff in error's brief appears to be substantially correct, and is as follows:

"This suit was originally filed by George E. Shelley, trustee of the estate of Andrew Jackson Heissner, bankrupt, on the 24th day of May, 1902, against the defendants S. F. Nolen, Adolph Trautwein, Jr., and H. C. Nolen. The plaintiff alleged in his amended original petition, filed April 16, 1904, that on the 30th day of September, 1899, Andrew Jackson Heissner, now deceased, filed in the District Court of the United States for the Western District of Texas, at Austin, his petition in bankruptcy, and on the 6th day of October, 1899, was duly adjudged a bankrupt by the said court, and the plaintiff was thereafter duly appointed trustee of said bankrupt and qualified as such trustee, and has ever since acted and is now acting as such trustee, and as such has brought this suit.

"Plaintiff further alleged that on or about the 15th day of February, 1898, said Andrew Jackson Heissner, being at that time insolvent and a debtor of various creditors mentioned in his schedule in bankruptcy, had one G. D. Heissner and wife convey to his wife, Myra Heissner, ninety-one and nine-tenths acres of land in Travis County, Texas, being one of the tracts in controversy in this suit; that the consideration for said land was the sum of $320, the community property of said Andrew Jackson Heissner and his said wife Myra Heissner, but that the title to said property was taken in the name of said Myra Heissner as her separate property; and that the said conveyance to the said Myra Heissner was made in fraud of the creditors of said Andrew Jackson Heissner, and for the purpose of placing said property beyond the reach of said creditors; by reason whereof the title to the said property never passed to the said Myra Heissner as her separate property, but the same became and was the community property of herself and her said

husband, Andrew Jackson Heissner, and so remained up to the time of the death of the said Myra Heissner and Andrew Jackson Heissner.

"Plaintiff further alleged that on or about the 26th day of January, 1898, whilst the said Andrew Jackson Heissner was insolvent and indebted to the creditors mentioned in his schedule in bankruptcy, he had one E. W. Herndon convey to H. C. Nolen five hundred and seventeen and one-half acres of land in Travis County, Texas, being the other tract of land in controversy in this suit; and that the consideration for said conveyance was the sum of $1,000, the community property of said Andrew Jackson Heissner and his wife Myra Heissner, which was paid to the said Herndon by the said Andrew Jackson Heissner, with the agreement and understanding between the said Andrew Jackson Heissner and the said H. C. Nolen that said property was the community property of said Andrew Jackson Heissner and wife, but that the title should be taken in the name of said H. C. Nolen, and that thereafter, on the 14th day of April, 1898, the said H. C. Nolen, joined by his wife, conveyed the said aforesaid property to Myra Heissner as her separate property, but that there was in fact, no consideration for such transfer save and except $1,000 paid by the said Andrew Jackson Heissner to the said E. W. Herndon, and that the said two conveyances were made for the purpose of defrauding the creditors of said Andrew Jackson Heissner, and of placing the aforesaid property beyond the reach of said creditors; and that said property was in truth and in fact, from the date of conveyance to the said H. C. Nolen up to and at the death of the said Myra Heissner and Andrew Jackson Heissner the community property of the said Andrew Jackson Heissner and his said wife.

"Plaintiff further alleged that thereafter, on, to wit, the 22d day of June, 1899, the said Myra Heissner, being at that time on her deathbed, executed her last will and testament, whereby she bequeathed to S. F. Nolen, her brother, all of the property belonging to her, both real and personal, and on the same day the said Myra Heissner died; that at the time said will was made the said Myra Heissner stated to the said S. F. Nolen and the subscribing witness to said will, and to all persons who were present when said will was executed, that said bequest of property was for the purpose of securing said property to her husband Andrew Jackson Heissner, from the claims of his creditors, and that said S. F. Nolen was to hold said property for the said Andrew Jackson Heissner, until such time as said Andrew Jackson Heissner should demand a conveyance of the same to him, and the said S. F. Nolen accepted said bequest with said understanding and agreement; that in said will, said S. F. Nolen was made independent executor, and that said will has been duly probated, and the said S. F. Nolen has taken possession of all the property here in controversy.

"Plaintiff further alleged that the aforesaid acts of placing the aforesaid property in the name of Myra Heissner, and the making of the aforesaid will, placing the title to said property in the name of S. F. Nolen were done with the fraudulent intent and design of placing said property beyond the reach of the creditors of Andrew Jackson Heissner, and for the purpose of preventing said creditors from applying the same to the payment of their debts, and that the said Myra Heissner and the said Andrew Jackson Heissner, and the said S. F. Nolen were

all parties to said fraudulent design and intent, and that all of the aforesaid acts were done in pursuance of the aforesaid design and intent and constitute a single object and conspiracy of defrauding the creditors of said Andrew Jackson Heissner.

"Plaintiff further alleged that in pursuance of said fraudulent design, purpose and conspiracy, the said Andrew Jackson Heissner subsequent to the death of his said wife Myra Heissner, filed his petition in bankruptcy as aforesaid, for the purpose of securing a discharge from his said debts, and with the intention, after securing such discharge, of taking a reconveyance of said property from said S. F. Nolen to himself, and thereafter, and prior to the granting of such discharge, the said Andrew Jackson Heissner died. Plaintiff further alleged that subsequent to the death of the said Andrew Jackson Heissner, and the death of his said wife, and in further pursuance of said fraudulent scheme and conspiracy, the said S. F. Nolen colluding, conniving, confederating and conspiring with Adolph Trautwein, Jr., and H. C. Nolen and each and all of the said parties having notice and knowledge of the aforesaid scheme and conspiracy to defraud the creditors of Andrew Jackson Heissner, for the purpose of perpetuating the aforesaid fraud, and for the purpose of placing all the property herein described beyond the reach of the creditors of said Andrew Jackson Heissner, and for the fraudulent purpose of placing all of the property here in controversy beyond the reach of this plaintiff, as trustee in bankruptcy for said creditors, and for the purpose of fraudulently and falsely claiming and asserting that the said Adolph Trautwein, Jr., and H. C. Nolen were and are innocent purchasers of said property, did enter into a fraudulent conspiracy with one another, in pursuance of which the said S. F. Nolen has conveyed a part of the property here in controversy to H. C. Nolen fraudulently and without consideration, and has conveyed another part of said property fraudulently and without consideration to Adolph Trautwein, Jr., and that the conveyances of the aforesaid property to said Adolph Trautwein, Jr., and the said H. C. Nolen, were both made with the full knowledge on their part of all of the facts hereinbefore set forth, and specially with the knowledge that said property was the community property of said Andrew Jackson Heissner and his said wife Myra Heissner, and with a full knowledge of the manner in which and the purpose for which the aforesaid will of Myra Heissner in favor of S. F. Nolen had been executed.

"Plaintiff further alleged that upon the adjudication of the bankruptcy herein, the title to the property here in controversy vested in plaintiff, as trustee of the said Andrew Jackson Heissner, and that by reason of the facts hereinbefore alleged, none of the defendants, by reason of the conveyances to them, have acquired any title to said property, but that all of said property belongs to the estate of said bankrupt, and the creditors of said bankrupt had no notice of the fraudulent acts charged herein, and by reasonable diligence could not have discovered same until, to wit, about the thirty days prior to the filing of the original petition in this cause.

"Plaintiff further alleged that the reasonable value of the use and occupancy of said two tracts of land was at the time of the fraudulent conveyance of the same and has been ever since, the sum of $1 per

acre per annum, and that by reason of the aforesaid fraudulent conveyance and the conspiracy to defraud the creditors of said bankrupt, the plaintiff has been deprived of the possession of said two tracts of land ever since the adjudication of bankruptcy of said Andrew Jackson Heissner and of the use and occupancy of same; by reason whereof he has been damaged in the sum of, to wit, $2,000.

"Plaintiff further alleged that one of said tracts of land contained ninety-one and nine-tenths acres, and fraudulently conveyed to Adolph Trautwein, Jr., was at the time of said conveyance of the market value of $10 per acre, and of the aggregate value of $919, and that the other tract containing five hundred and seventeen and one-half acres of land fraudulently conveyed by said S. F. Nolen to H. C. Nolen, was at the time of said conveyance of the market value of $6 per acre, and of the aggregate value of $3,105, and that by reason of the aforesaid fraudulent conveyances plaintiff has been damaged in the aforesaid sums of money, and in the event that the plaintiff be held not entitled to recover said land from defendants, Adolph Trautwein, Jr., and H. C. Nolen, then in that event, he has judgment against the said S. F. Nolen for the value of the two several tracts of land conveyed by him to said Adolph Trautwein, Jr., and the said S. F. Nolen. In conclusion, plaintiff prayed that, in his capacity as trustee of the estate of Andrew Jackson Heissner, bankrupt, he have judgment for the recovery of the aforesaid real estate from all of the defendants, together with his damages for the use and occupation of the same, and the cancellation of the aforesaid fraudulent conveyances, or if it be found that the said Adolph Trautwein, Jr., and the said H. C. Nolen did not participate in the fraud of the said S. F. Nolen in attempting to place the said two tracts of land beyond the reach of creditors of Andrew Jackson Heissner, then in that event he have judgment against the said S. F. Nolen for the value of said two tracts of land.

"The defendant S. F. Nolen answered as follows: (1) General demurrers; (2) special demurrers; (3) plea alleging misjoinder of parties defendant and misjoinder of causes of action; (4) general denial; (5) plea setting up two, three, four and five years statutes of limitation; (6) said defendant further answered that Andrew Jackson Heissner is dead, and that the said Myra Heissner is dead, and plaintiff claims by and through the said Andrew Jackson Heissner, and through said Myra Heissner, and that these defendants claim through them also, and that if the said Andrew Jackson Heissner committed the acts of fraud alleged by plaintiff, then the said Andrew Jackson Heissner, if alive, would be estopped, and the plaintiff as his legal representative is estopped from taking advantage of same, and that as between him and his wife Myra Heissner, they are bound by said acts; (7) defendant further answered that the said Andrew Jackson Heissner was finally discharged as a bankrupt on the 20th day of April, 1900, and that this suit was not brought within two years from that date, and, therefore, plaintiff can not recover herein; (8) defendant further answered that he and those under and through whom he deraigns title to the lands in controversy, committed no acts of fraud, and he specially denies all such, and says if said Myra Heissner, Andrew Jackson Heissner, H. C. Nolen and A. Trautwein, Jr., committed any acts of fraud, he is not aware of

it and was no party to it; that he owned said lands by good and perfect title without any knowledge of any fraud at the time of the disposal of same to the said H. C. Nolen and A. Trautwein, Jr.; that he was an innocent owner and holder of said land up to the date of his sale thereof to said H. C. Nolen and A. Trautwein, Jr., and that the plaintiff, therefore, is not entitled to recover any judgment herein against him.

"Defendant H. C. Nolen answered in this cause as follows: (1) General demurrer; (2) special demurrers; (3) special demurrer alleging misjoinder of parties defendant and misjoinder of cause of action; (4) special demurrer interposing the three and four year statute of limitation; (5) defendant answered specially, denying that the five hundred and seventeen and one-half acre tract was ever purchased in his name for the benefit of Andrew Jackson Heissner, and denying that the same was thereafter by him conveyed to Myra Heissner, wife of Andrew Jackson Heissner, for the purpose of defrauding the creditors of Andrew Jackson Heissner and of placing said land beyond their reach, and alleging that said land was purchased from said E. W. Herndon by himself and paid for with his own money, and that the same was thereafter sold by him to Myra Heissner, and that the purchase money for same was paid to him by the said Myra Heissner, and was her separate property; that defendant denies that the said will of Myra Heissner was made for the purpose of perpetrating said fraud and of keeping said land beyond the reach of the creditors of Andrew Jackson Heissner, and denying the same was made in any secret trust or understanding in favor of Andrew Jackson Heissner; and defendant further alleged that the said five hundred and seventeen and one-half acre tract was purchased by him on April 3, 1902, from S. F. Nolen in good faith, and that he paid to the said S. F. Nolen the sum of $750 and assumed the payment of a certain note for $500, and that this defendant purchased said land without notice or knowledge of any facts affecting the right of the said S. F. Nolen to convey same to him, and that he was not and never has been a party to any fraudulent conspiracy with Adolph Trautwein, Jr., S. F. Nolen, Myra Heissner and A. J. Heissner, to defraud the creditors of Andrew Jackson Heissner; and that the allegations in plaintiff's petition were falsely and fraudulent made for the purpose of conferring jurisdiction on this court to try in this suit the various and separate causes of action here involved; (6) defendant further answered, pleading the three and four years statute of limitation; (7) defendant by way of cross action asked judgment against S. F. Nolen upon his warranty for the value of the five hundred and seventeen and one-half acre tract in case the same should be recovered by plaintiff and for judgment against the said S. F. Nolen for whatever sum of money plaintiff might recover against this defendant; (8) defendant further answered by general denial.

"Defendant A. Trautwein, Jr., answered in this cause as follows: (1) General demurrer; (2) special demurrers; (3) special demurrers alleging misjoinder of parties defendant and misjoinder of causes of action; (4) special demurrer interposing the three and four years statute of limitation; (5) defendant answered specially, admitting that on the 26th day of April, 1902, he purchased from S. F. Nolen the ninety-

one and nine-tenths acre tract described in plaintiff's petition, which was conveyed to him by said Nolen on that date, and that said Nolen conveyed this land to him in consideration of the sum of $459.50 cash, which was at that time paid to said Nolen; that this defendant bought this land from the said Nolen and paid for the same, relying on and believing to be true the recitals in his chain of title, showing said land to be the separate property of Myra Heissner, and that she had left same absolutely and unencumbered by any secret trust by her will to S. F. Nolen; that at the time he paid the purchase money he was wholly without knowledge or notice of any fact showing that the estate of A. J. Heissner, or the creditors of same, had any claims to said land, and that he bought and paid for said land in perfect good faith, without any fraudulent purpose against the creditors of said A. J. Heissner, and without knowledge or notice of any fraudulent purpose on the part of S. F. Nolen, H. C. Nolen, Myra Heissner and A. J. Heissner; that the allegations of plaintiff's petition, insofar as they state facts showing that this defendant participated in any conspiracy, are false, and made for the fraudulent purpose of conferring jurisdiction on this court to try in this suit the various causes of action set up herein; (6) defendant plead specially the three and four years statute of limitation; (7) defendant plead over against S. F. Nolen upon his warranty for the value of said land and for judgment against said S. F. Nolen, for any sum of money which plaintiff might recover of this defendant.

"On the 19th day of May, 1904, this cause came on for trial, and both parties having announced ready for trial, the jury having been sworn was duly empaneled, and that plaintiff thereupon offered all of his testimony in chief and rested. The defendants all thereupon filed in writing and presented to the court their demurrers to the evidence, and the court, after first overruling same, reconsidered his action and entered a judgment and sustained all of said demurrers to the evidence, and thereupon withdrew the case from the jury and proceeded to enter a final judgment in behalf of the defendants."

*Opinion.*—If the plaintiff in error was not authorized to maintain this suit under the United States bankruptcy laws of 1898, then the judgment of the court below was correct, and should be affirmed, regardless of the other questions raised in the record.

The deeds of conveyance alleged by the plaintiff in error to be fraudulent are, a deed from E. W. Herndon to H. C. Nolen, conveying the five hundred and seventeen and one-half acre tract out of the Corbett Stevens survey described in plaintiff's petition, dated the 26th day of January, 1898, and filed for record in the clerk's office of Travis County, Texas, January 26, 1898; deed from H. C. Nolen and wife to Myra Heissner; conveying the same tract of land, and containing a recital of the consideration of $1,000, paid by Myra Heissner of her own individual separate money, dated the 14th day of April, 1898, and filed for record on the 21st day of June, 1898; and deed from George D. Heissner and wife to Myra Heissner, conveying ninety-one and nine-tenths acres out of the R. S. M. A. De La Tulla survey in Travis County, Texas, the same tract of land described in plaintiff's petition, containing the recital of the consideration of $320 paid by Myra Heissner out of

her own individual and separate money, dated February 8, 1898, and recorded February 15, 1898.

The United States Bankruptcy Act was approved July 1, 1898, and contains the following provision with respect to the time when it would go into effect: "This Act shall go into full force and effect upon its passage, provided, however, that no petition for voluntary bankruptcy shall be filed within one month of the passage thereof, and no petition for involuntary bankruptcy shall be filed within four months of the passage thereof." (Bankruptcy Law of 1898, p. 23.)

Andrew Jackson Heissner filed his petition in bankruptcy on the 30th of September, 1899, and was adjudicated a bankrupt on October 6, 1899, and was finally discharged April 20, 1900, and this suit was instituted on the 24th day of May, 1902.

The provision of the bankruptcy law relating to fraudulent conveyances, transfers, etc., by the bankrupt, reads as follows: "That all conveyances, transfers assignments or encumbrances of his property or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this Act, subsequent to the passage of this Act, and within four months prior to the filing of the petition, with intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or encumbered, as aforesaid, shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets of the estate of the bankrupt, and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise, for the benefit of the creditors. And all conveyances, transfers or encumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the State, Territory or district in which such property is situated, shall be deemed null and void under this Act against the creditors of such debtor, if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt." (Bankruptcy Law of 1898, subdivision e, sec. 67.)

The subdivision quoted only applies to conveyances, transfers, etc., made subsequent to the passage of the Act, and within four months prior to the filing of the petition in bankruptcy, and excludes the idea that such conveyances made prior to the passage of the Act, or prior to four months preceding the filing of the petition, were intended to be embraced within its provisions. As stated by Chief Justice Gaines, in Dittman v. Weiss (87 Texas, 620), "It is well settled, as a general rule, that one who claims property which has been conveyed in fraud of creditors by a title derived from the grantor subsequent to the conveyance, can not maintain an action to set it aside. In accordance with this rule, it has been repeatedly held in this court, that the administrator of the estate of deceased persons can not recover property fraudulently conveyed by his intestate." (Wilson v. Demander, 71 Texas, 603, and cases cited.)

The fraudulent conveyance is valid as between the grantor and grantee. Though void as to creditors, they can not avoid it, except by legal proceedings.    (Miller v. Koertge, 70 Texas, 162.)

The conveyance sought to be set aside by plaintiff in error, though fraudulent, place the title to the property in Myra Heissner, and it was no part of the bankrupt estate of her husband A. J. Heissner; and, consequently, no title was acquired thereto by the trustee by virtue of the bankruptcy law or proceedings thereunder.    The trustee of the bankrupt derives his authority to set aside fraudulent conveyances made by the bankrupt, alone from the bankruptcy law, and he can maintain only such suits for that purpose as that law gives him specific authority to bring and maintain.    In the absence of such authority, he occupied the same relation to the bankrupt's estate as an administrator to his intestate's estate, or an assignee of an insolvent to the latter's estate. (Wilson v. Demander, supra; Dittman v. Weiss Bros., supra.)

We therefore conclude that the plaintiff in error had no legal authority to maintain this action.    This conclusion renders it unnecessary for us to consider or pass upon the other questions presented.

There being no reversible error in the record, the judgment of the court below is affirmed.

*Affirmed.*