**JOHNSON v. LAGOW et al.　(No. 11852.)**

Court of Civil Appeals of Texas. Fort Worth. March 24, 1928.

Rehearing Denied May 5, 1928.

1. Evidence ⬅═➡230(3)—General rule is vendor's declarations after sale, without purchaser's presence or knowledge, cannot be received in evidence to defeat purchaser's title.

The general rule is that the declarations of a vendor, made after a sale and without the presence or the knowledge of the purchaser, cannot be received in evidence to defeat purchaser's title to property conveyed.

2. Evidence ⬅═➡253(3)—Vendor's declarations after date of deed, though not in purchaser's presence, held admissible against purchaser, where prima facie case of fraud was established.

In suit to set aside conveyance of land as fraudulent and void as to creditors, declarations of vendor made after date of his deed conveying land held admissible, as against purchaser, in derogation of his title, where a prima facie case of fraud was established, though the declarations were not made in purchaser's presence, such admission of evidence being an exception to general rule.

3. Evidence ⬅═➡260—Fraudulent common purpose must be established outside of vendor's declarations made after deed given and without purchaser's presence, before declarations are admissible against purchaser.

Fraudulent common purpose must be established outside of and independently of vendor's declarations made after deed was given and out of purchaser's presence, before such declarations are admissible against purchaser.

4. Evidence ⬅═➡260—Evidence held sufficient to warrant finding vendor and purchaser were so interested as to show fraudulent common purchase, as affecting admissibility of vendor's subsequent declaration without purchaser's presence.

In suit to set aside conveyance of land as fraudulent and void as to creditors, evidence held sufficient to justify jury and trial court in finding that purchaser and vendor were jointly interested in conveyance of vendor debtor's property, thus showing such fraudulent common purpose as to make admissible against purchaser declarations of vendor, made after date of deed, though made out of purchaser's presence.

5. Evidence ⬅═➡260—Where there is other evidence of vendor and purchaser's common purpose to defraud creditors, vendor's declarations after transaction are admissible against purchaser.

Where there is other evidence indicative of a common purpose of the vendor and purchaser to defraud vendor's creditors in conveyance, the vendor's declarations of his intent in making the sale, made after the transaction, are admissible as against purchaser.

6. Evidence ⬅═➡220(2)—Stranger's declarations in purchaser's presence relative to ownership held admissible against purchaser, where purchaser was silent.

In suit to set aside conveyance of land as fraudulent and void as to vendor's creditors, declarations of stranger, made in presence of purchaser, relative to land ownership being in other than purchaser, held admissible on question of fraud in conveyance, where purchaser was silent when declarations were made, though under such circumstances he had a duty to speak.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Suit by W. E. Lagow and another against W. M. Johnson and others. Judgment for plaintiffs, and named defendant appeals. Affirmed.

A. H. Kirby, of Fort Worth, and Shropshire & Bankhead, of Weatherford, for appellant.

Hood & Shadle, of Weatherford, and Ayres & Payne, of Floydada, for appellees.

BUCK, J. W. E. Lagow and Mrs. E. P. Polk brought suit in the district court of Parker county against D. F. Minney, his wife, Edna E. Minney, and W. M. Johnson, for the title and possession of 235 acres of land situated in Parker county, and further alleged that the deeds under which defendant W. M. Johnson claimed title to said land were made for the purpose of defrauding, hindering, and delaying creditors of D. F. Minney, including plaintiffs; that said deeds were fraudulent and void; that defendant W. M. Johnson paid

no consideration for said land, and, if he did pay any consideration therefor, he did so with notice of the intent of D. F. Minney to defraud, hinder, and delay his creditors; that the beneficial title to said land was still in D. F. Minney until July 10, 1925; and plaintiffs prayed for judgment for the land, for the cancellation of the deeds under which appellant claims, for costs and general relief.

Defendants D. F. Minney and Edna E. Minney filed a disclaimer. Defendant W. M. Johnson answered by a general demurrer, certain special exceptions, a general denial and a plea of not guilty.

The cause was tried by a jury upon special issues, which, with the answers thereto, are hereinafter set out:

"(1) In making said transfer referred to above, was it the purpose and intention of the said D. F. Minney to hinder or defraud the plaintiffs in the judgment against him introduced in evidence, or other creditors, if he had other creditors, in the collection of their debt or debts? Ans. Yes.

"(2) If you have answered issue No. 1 in the affirmative, then did the defendant W. M. Johnson know or have notice of such purpose or intention, if any, on the part of said D. F. Minney, at the time or prior to the time said transfer was made? Ans. Yes. By deed dated August 1, 1924, Edna E. Minney, joined by her husband, D. F. Minney, conveyed to Elmer Seibold said one-half interest of said 50-year lease, in consideration whereof said Seibold, in addition to a recited cash consideration of $6,500, conveyed to said Edna E. Minney the 235 acres of land involved in this suit.

"(3) In taking the title of said land, and procuring the same to be made to Edna E. Minney, wife of D. F. Minney, was it their purpose and intention thereby to hinder or defraud the judgment creditors named in the judgment introduced in evidence, or other creditors of D. F. Minney, if he had other creditors, in the collection of their debts? Ans. Yes.

"(4) If you have answered issue No. 3 in the affirmative, then did the defendant W. M. Johnson have notice or knowledge of such purpose and intention, if any there was, on the part of D. F. Minney and his wife? Ans. Yes. By deed dated August 4, 1924, Edna E. Minney and D. F. Minney conveyed to the defendant W. M. Johnson the 235 acres of land in controversy in this suit.

"(5) Were the conveyance of said land, named immediately above, and the transactions had in effecting said conveyance, made and done with the purpose and intent on the part of D. F. Minney and wife, or hindering and defrauding the judgment creditor of D. F. Minney named in the judgment introduced in evidence, or other creditors of D. F. Minney, if any there were? Ans. Yes.

"(6) If you have answered issue No. 5 in the affirmative, then did the defendant, W. M. Johnson, at the time of said conveyance, have knowledge or notice of such purpose and intention, if any there was, on the part of D. F. Minney and wife? Ans. Yes."

Upon the verdict so rendered, the court entered judgment for plaintiffs, for the land in controversy, and further canceled the deed, dated August 4, 1924, from Edna E. Minney, joined by her husband, D. F. Minney, to W. M. Johnson. Costs of trial were adjudged against W. M. Johnson. From this judgment, W. M. Johnson has appealed.

### Opinion.

Only one assignment of error is contained in appellant's brief, with two propositions under this assignment, to wit:

"(1) Declarations of a vendor, claiming an interest in land, made after the date of his deed conveying the land and not in the presence of the vendee, are not admissible in evidence, as against the vendee, in derogation of the title of the vendee.

"(2) Declarations and statements, made by a stranger in the presence and hearing of a party sought to be affected thereby, do not call for a reply by such party, who may treat same as an impertinence, nor can any inference of assent be drawn from such silence."

We will discuss the two propositions together. It is agreed that Elmer Seibold is a common source of title. There was introduced in evidence a general warranty deed from Elmer Seibold to Edna E. Minney, dated August 1, 1924, reciting a consideration of $10 paid, and the assignment of an undivided one-half interest in a lease dated October 11, 1920, covering all of lots 13, 14, 15, and 16, block 96, City addition to Fort Worth, Tex., said assignment made by Edna E. Minney and husband D. G. Minney to Elmer Seibold, which said deed conveyed the 235 acres of land in controversy, and it was admitted that said deed was duly acknowledged and filed for record in Parker county, August 5, 1924. There was also introduced a deed from Edna E. Minney and husband, D. F. Minney, to W. M. Johnson, dated August 4, 1924, reciting a consideration of $23,500 paid and conveying the 235 acres of land in controversy, which deed was duly acknowledged by the makers and filed for record on August 5, 1924. It was agreed: That by a lease dated October 11, 1920, J. M. Vincent leased to W. M. Johnson and D. F. Minney lots 12, 14, 15, and 16, in block 96, City addition to Fort Worth, for a period of 50 years at a rental of $10,000 a year, and that D. F. Minney owned a half interest, and Johnson, appellant here, owned the other half. This lease is of record in Tarrant county. That on July 21, 1924, D. F. Minney transferred to his wife, Edna E. Minney, his half interest of said lease, for a recited consideration of $10 and her assumption to pay half the taxes, state, county, and city, amounting to $6,000, and that this was filed in the deed records of Tarrant county. That Edna E. Minney, joined by her husband, D. F. Minney, conveyed this lease to Elmer Seibold on July 30, 1924, and that the land in controversy and $6,500 in cash was the consideration paid by

Seibold for the said lease so transferred. That only one half of the lease went in this conveyance, the other remaining in W. M. Johnson. This instrument is recorded in Tarrant county. A judgment, dated October 31, 1923, in a cause entitled Southern Manufacturing Company v. D. F. Minney, was rendered in the Seventeenth district court in favor of the plaintiff for the sum of $1,042.10, with foreclosure of mechanic's lien on certain property in the Worth building in Fort Worth, with interest on said judgment at 6 per cent. per annum and all costs of suit. On the margin of such judgment record is a transfer of the judgment by the Southern Manufacturing Company and the Southern Ornamental Iron Works, its successor, to Mrs. E. P. Polk and W. E. Lagow, plaintiffs below. There also was introduced a certified copy of a judgment of the Seventeenth district court, dated November 26, 1923, in the case of Southern Manufacturing Company v. D. F. Minney. decreeing that the judgment theretofore rendered in the case be so reformed as that the plaintiffs shall recover the money judgment, but be denied the foreclosure of the mechanic's lien. There was also introduced a supersedeas bond signed by D. F. Minney, Mrs. Polk, and Lagow, the two latter as sureties. This judgment was shown to have been affirmed by the Court of Civil Appeals. The original execution was shown to have been executed on June 2, 1925, in the case of Southern Manufacturing Co. v. D. F. Minney, and returned on June 3d not executed, no property belonging to defendant having been found on Tarrant county subject to execution; also a certified copy of an alias execution, dated June 3, 1925, to the sheriff of Parker county was introduced in evidence,. which execution was executed on June 3, 1925, by levying upon the land in controversy as the property of D. F. Minney, and the same was further executed on June 4, 1925, by advertising for sale said property by having published a notice of the time and place of sale for three consecutive weeks preceding said sale in the Weekly Herald, a newspaper published in said county, and further executed on July 7, 1925, by selling said property to Mrs. Polk and W. E. Lagow for the sum of $150.

The testimony to which objection was made was from a witness named H. D. Stewart. He testified that he had known D. F. Minney since the early part of 1925; that Minney took up with him one day the sale of the land in controversy; that he went to W. M. Johnson after having had this conversation with Minney, and repeated to him as nearly as he could what Minney had said to him; that he was in the real estate business, and Minney told him that he had a piece of land in Parker county, and that Johnson was interested in the piece of land, and they wanted to sell it, and asked him if he thought he could sell; that he told him it was worth $75 an acre, but "we will take less." He said that Johnson "will ask you $75 an acre, but I am telling you you can get it below [that price]; we will take $50 an acre for it." He stated that he talked to W. M. Johnson later, and he priced the land at $60 or $65 an acre; that he told Johnson that Minney had told him to speak to Johnson about the land "they had in Parker county, the particular land we are talking about"; that Minney was not present at the time he talked to Johnson; that he told Johnson that Minney said that he (Minney) owned an interest in the land in Parker county, and had the land out there for sale. He further testified, in response to the question on cross-examination, "Is it not a fact you stated to him substantially this, 'I think I have got a buyer for Minney's land in Parker county;'" and he answered:

"I will say, I think Dr. Johnson and I had that conversation after Minney left there, but that was not the first time; I recall another conversation. It was a fact that I approached him and made the statement to him, 'I think I have a buyer for Minney's land in Parker county.' I don't think Dr. Johnson told me then and there that Minney did not have any land in Parker county, but I cannot say whether he told me that or not; I don't believe he did, but I would not say positive. * * * I talked to Dr. Johnson once after Minney left Texas and went to California, but the first conversation was before Minney left here. One of the conversations with Dr. Johnson was in the Worth building and the other was on the street. I don't recall where it was. I never had any other conversation with Dr. Johnson that I remember of. I do not remember any other conversation than the two I have testified to, and, if I ever had any other conversation, I do not remember it."

[1] The rule upon which appellant relies is stated in Hinson v. Ely Walker & Co., 65 Tex. 103, as follows:

"It is well settled that the declarations of a vendor made after a sale, and without the presence or knowledge of the vendee, cannot be received in evidence to defeat the vendee's title to the property conveyed"—citing cases.

[2] Appellant also cites the case of De Shazo v. Eubank (Tex. Civ. App.) 191 S. W. 373, which was reversed by the Supreme Court and judgment rendered for appellant. But we believe the general rule to be as stated in Hinson v. Ely Walker & Co., supra. But there are some exceptions to this rule, and we believe that under the circumstances of this case the declaration of Minney was admissible. In Moore v. Robinson (Tex. Civ. App.) 75 S. W. 890, it is said:

"The general rule is well settled that the declarations of a grantor, after his sale, cannot be received to impeach his conveyance" (citing cases). "There are exceptions to the rule, however, which are universally recognized: (1) Where there has been a prima facie case of

fraud established, as where the thing granted has a corpus, and the possession of the thing after the sale remains with the seller; (2) where the declarations are made in the presence of the vendee, and he acquiesces in the statements, or asserts no rights where he ought to speak; and (3) where the evidence establishes a continuing conspiracy to defraud between the vendor and vendee."

In 10 R. C. L. p. 985, under the general head of "Evidence" and under the subhead of "Fraud," it is said:

"Upon a question of fraud, declarations made at the time of the transaction become a part of the res gestæ. Thus declarations of the plaintiff made at the time of entering into a contract may be given in evidence in an action to enforce it, where the defense is that it was procured by false and fraudulent representations. So the declarations of a grantor are admissible as part of the res gestæ against the grantee, if they tend to show fraud in the making of the deed, and, though made to a conveyancer who prepared the deed, and not in the grantee's presence, they may be received in a case where the grantor's creditors seek to vacate the deed as fraudulent against them. Similarly, declarations of parties who engaged in a combination to procure a fraudulent sale of a debtor's goods are admissible as part of the res gestæ to prove such combination, in an action by a defrauded creditor who had a bill of sale of the goods, against a purchaser at such sale."

In 12 R. C. L., p. 676, § 180, under the subhead of "Subsequent Declarations," it is said:

"Ordinarily the declarations of fraudulent intent made by the vendor after the transfer are not admissible as against the vendee to affect his title. There are, however, three exceptions to the rule which are universally recognized: (1) Where there has been a prima facie case of fraud established, as where the thing granted has a corpus, and the possession of the thing after the sale remains with the seller; (2) where the declarations are made in the presence of the vendee, and he acquiesces in the statements, or asserts no rights where he ought to speak; and (3) where the evidence establishes a continuing conspiracy to defraud between the vendor and vendee. In many of the cases holding this class of declarations not admissible, the courts apparently recognize that the rule would be different were the vendee connected with the fraud. Hence, where there is other evidence indicative of a common purpose of vendor and vendee to defraud the former's creditors, the vendor's declarations of his intent, made after the transaction, are held admissible as against the vendee."

The evidence in this case shows that at the time of the vesting of title to the land through the deed from Elmer Seibold to Mrs. Minney and the subsequent sale to Johnson, by Mrs. Minney, joined by her husband, Minney was badly insolvent. He, with W. M. Johnson, the plaintiff in this suit, and others, had purchased a number of leases on office buildings in the city of Fort Worth, binding themselves to pay large sums of money therefor. Owing to the failure of such buildings to produce the anticipated rent, perhaps, Minney had gotten into a bad financial condition. Several witnesses testified that W. M. Johnson had told them that he was having to furnish Minney with money on which to eat during this time and subsequent thereto. Mrs. Polk testified that she recalled a conversation she had with W. M. Johnson "about the time some kind of extraordinary proceedings, garnishment or citation, was being served with reference to Johnson having claimed to have bought the land in question, and relative to the solvency or condition of Minney, or the advice he had given Minney about what he had to do to save himself, and Johnson told me he had advised Minney time and time again to get Minney to put his property in his wife's name, I said to Dr. Johnson, 'Do you think that would be a fair transaction?' and he said, 'No, I guess it wouldn't.' I asked Dr. Johnson then if Minney still had a farm near Fort Worth. He said, 'No; I bought that farm.' I said to him, 'How much have you paid for it? Minney should have some money then.' He replied, 'I paid $22,000 for it.' I then said to him, 'How did you pay it?' He said, 'I gave a check,' and hesitated and corrected himself and said 'money,' and left the office."

In Johnston v. Spoonheim, 19 N. D. 191, 123 N. W. 830, 41 L. R. A. (N. S.) 1, the subject of admissibility of declarations made by the grantor subsequent to the sale of land is fully discussed and annotated. On page 27, 41 L. R. A. (N. S.) it is said:

"These decisions are usually based upon the theory that the res gestæ of the fraud may be considered as in progress so long as the vendor retains possession [citing cases]. Subsequent declarations of a vendor of land remaining in possession after a conveyance attacked as in fraud of his creditors, that he conveyed the land to defeat a certain debt and to retain a home for himself for life, are competent against the vendee. The statement that the deed was intended to defraud creditors is not simply a declaration as to the intent of a past transaction, but is to be regarded as a declaration concerning the right by which the vendor held the land at the time of making such declarations, and, as the declaration of a present intent and purpose, is within the rule as to proof of the res gestæ. McCord v. McCord, 3 S. C. 577."

[3-5] The fraudulent common purpose must first be established outside of and independently of the declarations, before the latter are admissible as evidence. Moore v. Robinson, supra, and other cases cited in Johnston v. Spoonheim. But we think there is sufficient evidence in the record to justify the jury and the trial court in finding that W. M. Johnson and Minney were jointly interested in the conveyance of Minney's property interest, irrespective of the testimony of Stewart, against which the objection is urged. Where there

is other evidence indicative of a common purpose of the vendor and vendee to defraud the former's creditors, the vendor's declarations of his intent in making the sale, made after the transaction, are admissible as against the vendee. Johnston v. Spoonheim, 41 L. R. A. (N. S.) page 24, in a note in which are cited a number of cases, including the Texas decision of Shelley v. Nolen, 38 Tex. Civ. App. 343, 88 S. W. 528; Hamburg v. Wood, 66 Tex. 168, 18 S. W. 623. See, also, Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507, writ of error denied. It is held in Benjamin v. Mc-Elwaine-Richards Co., 10 Ind. App. 76, 37 N. E. 362, and cited in Johnston v. Spoonheim, 41 L. R. A. (N. S.) page 26, that:

"There is no consummation of the conspiracy so as to exclude, as against a chattel mortgagee, statements by the mortgagor as to his purpose, made after the transfer, until the purpose thereof has been accomplished."

[6] We think that under this statement of the law, which we approve, the testimony admitted of H. D. Stewart was proper.

For the reasons stated, all assignments are overruled, and the judgment is affirmed.