

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-267-CR

JAN MICHAEL CASAS                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Jan Michael Casas entered an open plea of guilty to the offense of unlawful possession of a firearm, and the trial court sentenced him to nine years' confinement.  In two issues, Appellant argues that the trial court erred

------------

[1] *See* Tex. R. App. P. 47.4.

by failing to sua sponte conduct a competency hearing and that he did not voluntarily and knowingly enter his plea of guilty. We will affirm.

## II. PROCEEDING BEFORE THE TRIAL COURT

At the beginning of the reporter's record, the trial court indicated that Appellant's case was set for trial and that his counsel wanted to question him to put a few matters on the record. Appellant agreed that he had denied the State's plea-bargain offer of eight years' confinement, that he spoke with his attorney in jail four days ago, and that his attorney had told him that the range of punishment was enhanced up to twenty years. Appellant acknowledged that he told his attorney that he was fired and that he did not want to talk about any "witnesses that [he] had." Appellant's attorney asked whether Appellant had told him for the first time this morning that he has "MHMR issues." Appellant said that he had told him about those issues "three times before that." Appellant then said he had no witness available to testify at punishment and that he was trying to "get another lawyer."

The trial court then recommended that Appellant be arraigned and asked Appellant if he understood what was occurring. Appellant replied, "No, sir." The trial court explained to Appellant that it had to arraign him both outside the presence of the jury and in front of the jury. Appellant was then arraigned, and he pleaded guilty instead of not guilty. The trial court recommended that

2

Appellant talk to his attorney because "then we come to just an issue of punishment." The record indicates that a break was then taken.

After the break, the trial court stated that Appellant evidently had a change of heart about his plea, that Appellant would not talk to his attorney about the case, and that this was a "difficult lawsuit" because apparently there was a video showing Appellant with a gun. The court admonished Appellant that he could either plead not guilty or guilty. The State confirmed that the offer of eight years had been rejected and that there was no offer "on the table." To that, Appellant questioned, "Well, would the eight years be aggravated, 3g offense." After the State once again explained that there were no outstanding plea offers, the trial court asked Appellant if he wanted to "talk to [his] attorney a minute." Appellant nodded his head up and down, and another break was taken.

After the break, the trial court stated that Appellant had signed paperwork indicating that he desired to enter a plea of guilty. The trial court confirmed that, according to the paperwork, Appellant had no questions of the court nor of his attorney and that he was entering his plea freely and voluntarily. Appellant indicated that he was a United States citizen, that he was pleading guilty, and that he understood that it was an open plea of guilty. The trial court accepted Appellant's plea and found him guilty.

3

The case proceeded to the punishment phase, and Appellant testified that he is engaged, has one child, is from Puerto Rico, and was twelve years old when his father died. Appellant testified that he was on "cocaine, methamphetamine, bombing fluid, marijuana and alcohol" when he was arrested for possessing a weapon and that he has been addicted to methamphetamine since 2001. Appellant agreed that he has a history of "mental and mental retardation." In response to the question of whether the mental retardation was "Dallas or Tarrant County," Appellant said, "It's both." Appellant testified that he has had a history of "that" since his father died and that he hears two voices: his father's voice and his uncle's voice. Appellant's counsel then asked, "Do you feel like you understand everything that's going on in court?" Appellant responded, "Yes, sir." Appellant explained his understanding of an open plea, and he confirmed his understanding that the range of punishment was two to twenty years. When given an opportunity to address the trial court, Appellant apologized for committing the crime and acknowledged that his actions hurt others besides himself.

On cross-examination, Appellant agreed that he has previously been convicted of sexually assaulting a child, indecency with a child under age seventeen, and assaulting an invalid. The trial court sentenced Appellant to nine years' confinement, and it asked him, "[Are] there any questions about

4

what happened here today?"  Appellant responded, "No, sir."  The trial court then said the following to Appellant:

> When you get out, if you've got mental health problems - - first off, you've got a drug problem.  You need to volunteer for every program they got down there to get yourself straight so when you get out, if you have mental health problems, then you can get on medication.  They can probably start you some if you're having mental health problems when you're there.  When you get out, then go to MHMR, get yourself on a mental health program where you're not up in the criminal justice system.  Otherwise, next time the minimum is going to be 25 years.  It's up to you.

### III. INCOMPETENCY

In his first issue, Appellant argues that the trial court erred by failing to sua sponte conduct an informal inquiry into his competency.  Appellant contends that the trial court should have ordered a competency exam because he could not adequately consult with his court-appointed attorney, he has a history of mental retardation and mental health issues, and he could not understand the proceedings against him.

A trial court cannot accept a plea of guilty "unless it appears that the defendant is mentally competent and the plea is free and voluntary." Tex. Code Crim. Proc. Ann. art. 26.13(b) (Vernon 2009).  A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence.  *Id*. art. 46B.003(b) (Vernon 2006).  A defendant is incompetent to stand trial if he does not have

5

"sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against" him. *Id*. art. 46B.003(a). If evidence suggesting that the defendant may be incompetent to stand trial comes to the attention of the trial court, the court, on its own motion, shall suggest that the defendant may be incompetent to stand trial. *Id*. art. 46B.004(b). On the suggestion that the defendant may be incompetent to stand trial, the trial court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. *Id*. art. 46B.004(c).

An informal inquiry is not required, however, unless the evidence is sufficient to create a bona fide doubt in the mind of the trial court about the defendant's competency. *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003); *see Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 904 (2009). A bona fide doubt is a real doubt in the judge's mind as to the defendant's competency. *Fuller*, 253 S.W.3d at 228. Evidence is sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *Id*. We review a trial court's implied decision not to hold an informal competency inquiry for an abuse of discretion. *Moore v. State*, 999

6

S.W.2d 385, 393 (Tex. Crim. App. 1999); *Gray v. State*, 257 S.W.3d 825, 827 (Tex. App.—Texarkana 2008, pet. ref'd).

Here, Appellant testified that he attempted to fire his attorney and that he did not want to talk to his attorney about any "witnesses that [he] had." Appellant also refused to communicate with his attorney during the first break taken in the proceeding. After the first break, however, the trial court informed Appellant of his choices and asked him if he wanted to talk to his attorney. Appellant nodded his head up and down. When the break concluded, the trial court indicated that Appellant had signed papers demonstrating that he desired to plead guilty. Appellant confirmed that he did not have any questions for the trial court or for his attorney and that he understood that he was entering an open plea. In light of the record, the trial court could have reasonably concluded that before Appellant entered the open plea, he merely *chose* not to communicate with his attorney, not that he did not have *the ability* to consult with his attorney with a reasonable degree of rational understanding.

As for Appellant's understanding of the proceedings, the only portion of the record showing that Appellant did not understand the proceedings was when the trial court recommended that Appellant be arraigned. After Appellant's proclamation, the trial court explained that Appellant had to be arraigned both outside and in front of the jury. Appellant was then arraigned,

7

and there is nothing further in the record demonstrating that Appellant did not understand the arraignment process or any other part of the proceeding. Indeed, Appellant indicated that he understood he was entering an open plea of guilty, confirmed that he understood "everything that's going on in court," explained his understanding of an open plea, confirmed his understanding that the range of punishment was two to twenty years, and affirmed for the trial court that he did not have any questions "about what happened here today."[2] Thus, the trial court could have reasonably concluded that Appellant had a rational and factual understanding of the proceedings.

Although Appellant testified that he told his attorney about "MHMR issues," that he has a history of "mental and mental retardation," and that he hears his father's and uncle's voices, this scant testimony does not demonstrate that Appellant suffers or has suffered from recent severe mental illness, that Appellant is at least moderately retarded, or that Appellant has engaged in any truly bizarre acts. *See Fuller*, 253 S.W.3d at 228. Nor does the evidence demonstrate that Appellant had previously been adjudicated incompetent to stand trial. *See Bradford v. State*, 172 S.W.3d 1, 4 (Tex.

---

[2] Appellant even questioned whether the offense was a "3g offense," likely referencing a particular provision of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g (Vernon Supp. 2008) (enumerating offenses for which trial judge cannot grant community supervision).

App.—Fort Worth 2005, no pet.) (stating the law requires that after a defendant has been adjudicated incompetent to stand trial and has been criminally committed to a mental hospital, the trial court must make a judicial determination that the defendant has regained competency before the criminal proceedings against him may be resumed).

Having considered the entire record, we cannot conclude that the evidence raised a bona fide doubt as to whether Appellant had (1) a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. *See McDaniel*, 98 S.W.3d at 710. Accordingly, we hold that the trial court did not abuse its discretion by failing to sua sponte conduct an informal inquiry into Appellant's competency. *See* Tex. Code Crim. Proc. Ann. art. 46B.004(c), (d). We overrule Appellant's first issue.

### IV. VOLUNTARINESS OF PLEA

In his second issue, Appellant argues that his plea was not voluntarily and knowingly entered because he "was suffering from mental health issues and refused to discuss his case with his attorney," he "was not aware of the ramifications of his actions," he did not "understand the gravity of his decision to enter a plea of guilty," and he "was not able to comprehend the gravity of his actions." Appellant's argument—which contains no record references—is

9

centered entirely on his first issue, which we have already overruled. Moreover, Appellant confirmed both before the trial court and in the written plea admonishments that he was entering his plea freely and voluntarily. Accordingly, we overrule Appellant's second issue.

## V. CONCLUSION

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MEIER, J.; CAYCE, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 25, 2009

10