JAMES BUCKINGHAM v. JOSEPH TYLER.

*Fraudulent conveyances—Evidence—Sale—Passing of title—Burden
of proof.*

1. The declarations of a vendor to his vendee, not being a part of
the *res gestœ,* cannot be used to show the good faith of the
parties in making the sale when it is attacked by creditors as
fraudulent.

   So *held,* where a debtor exchanged his stock of goods for a
farm, expecting, as he claimed, to make a loan of his vendee
on the farm with which to pay his debts, which the vendee
refused to make after the levy of attachments on the goods by
the debtor's creditors, and on the trial of a suit brought by
the vendee for the value of the goods he sought to show the
statements of the debtor made to him after such attachments
as to his efforts to secure such loan of other parties.

2. Anything said or done by a vendor, before or at the time of an
alleged fraudulent sale, showing his intent to thereby defraud
his creditors, is admissible as evidence of such intent; and it is
not necessary to its admission for *that* purpose that it should
have been said or done in the presence of the vendee.

3. The *fact* of the fraudulent intent of a vendor in making a sale
cannot affect the vendee, if ignorant of such intent; but such
*fact,* if established, may be weighed with the other circum-
stances in the case, to determine whether or not the vendee was
a party to such fraudulent intent, or had such knowledge that
he was put upon inquiry as to the good faith of the vendor in
making the transfer.

4. Where in trover by a vendee against a sheriff, who had attached
the goods at the suit of the vendor's creditors, the plaintiff was
allowed to show a tender of the goods by the sheriff to him
*after* the commencement of the trover suit, and his refusal to
accept them, the *reason* of such refusal may be shown on cross-
examination.

5. In a suit by a vendee against a sheriff for the value of goods
attached at the suit of the vendor's creditors upon *valid* writs,
proof of the tender of the goods to the plaintiff by the sheriff,
and affidavits for continuance of the suit made by him and
his attorneys, are inadmissible in support of plaintiff's theory
that the attaching creditors and the sheriff knew that the sale

was an honest one, and that the attachments were levied for vexatious purposes, there being no evidence in the case tending to show that the sheriff was actuated by any malice in the transaction, but, on the contrary, it appearing that he was undertaking simply to perform his duty, as he understood it

6. A vendee who sues as *owner* of goods attached at the suit of the vendor's creditors, who attack the sale as fraudulent, has the burden of showing that at the time of the attachment the sale or transfer of the goods had been completed, and the title had passed.

Error to Oceana.    (Dickerman, J.)    Argued June 29, 1888.    Decided February 15, 1889.

Trover.    Defendant brings error.    Reversed.    The facts are stated in the opinion.

*Fletcher & Wanty* and *Gurney & Travis,* for appellant.

*L. G. Rutherford* (*W. E. Ambler,* of counsel), for plaintiff.

MORSE, J.    In this case the plaintiff, a resident of Zanesville, Ohio, claims to have exchanged a farm in Delaware county, in that state, for a stock of goods owned by Harvey Cockell, at Mears, in Oceana county, Mich.    The contract between the parties will be found in the opinion filed by the Chief Justice.    It is an unusual one in some respects, and it is noticeable that the agent of Buckingham delivered his deed of a farm valued at $17,800 to Mr. and Mrs. Cockell for a stock of goods he had never seen, and to parties of whose responsibility he knew little or nothing, before the key of the store was delivered to him, and before the goods had been inventoried by him, or any one in his behalf; and by the contract, if the goods in the store, of which he knew nothing save from the representations of Cockell, did not invoice at their true value to the amount of $17,800, then the Cockells were to pay Buckingham the deficit in stock at a fair cash value, or notes.

After the deed was delivered, and the key of the store passed over to plaintiff's agent, one Thomas, but before the goods had been removed, though some of them were upon cars preparatory to being moved to Ohio, where Buckingham purposed to take all of them, certain creditors of Cockell, claiming the sale of the goods or the transfer of them to Buckingham to be fraudulent as against them, procured writs of attachment, and the defendant, as sheriff, levied upon all the property thus transferred by Cockell to plaintiff. Buckingham brought this suit in trover to recover the value of the goods thus taken, and obtained a verdict in the circuit court for Oceana county.

I am satisfied that error was committed on the trial in the following respects:

First, it was claimed that Cockell, to show his good faith in the matter, expected to loan $7,000 or $8,000 of Buckingham by mortgage upon the lands purchased of him, but that, after the attachments were levied, Buckingham refused to make the loan. Buckingham was then asked:

"What did Mr. Cockell tell you about having tried to loan money on the farm?"

This was objected to as incompetent and immaterial, but an answer was permitted. It is claimed that this was proper, in order to show that Cockell was trying to raise money to pay his debts, and therefore did not make the trade with intent to cheat his creditors. This looks to me like an attempt to use the talk of the parties between themselves, after the contract between them was made, to corroborate their claim of good faith in the transaction. I know of no rule of law that permits this. If Cockell was trying to loan money of others upon his farm to pay his debts, it might be proper to show it by

such persons, or by himself; but the fact that he so stated to Buckingham was purely hearsay, and objectionable on that account, as well as incompetent, for the reason that it was using his own declarations, not a part of the *res gestæ*, to show his good faith, and that of the plaintiff, in the transaction being inquired into. But, when this was admitted, we find the court afterwards refusing to allow the defendant to show, by the cross-examination of William Downing, Cockell's book-keeper, the indebtedness of Cockell at the time he made this transfer, which was certainly error.

To make the defense in this case two things were necessary:

1. To establish that Cockell disposed of these goods with intent to hinder, delay, or defraud his creditors.

2. That Buckingham had such a knowledge of Cockell's indebtedness, and other facts surrounding the transaction, as would have been sufficient to put an ordinarily prudent man upon inquiry as to Cockell's intent in the transaction, or that he was knowingly a party to the fraud."

Anything that Cockell said or did, before or at the time of the transaction, therefore, showing his intent to defraud his creditors, was admissible to support the first branch of the defense; and it was not necessary to its admission for that purpose that it should have been said or done in Buckingham's presence or hearing. The fact of Cockell's fraud could not affect Buckingham, if he was ignorant of it; but such fact, if established, was competent in the case, to be weighed with other circumstances in the case, to determine whether or not Buckingham was a party to it, or had such knowledge that he was put upon inquiry as to the good faith of Cockell in making the transfer. Buckingham could not be allied with any fraud of Cockell, unless such fraud existed; and therefore it was competent to establish it, as an independ-

ent fact in the case, to be used in arriving, under proper instructions from the court, at the main fact in the case, to wit: The connection of Buckingham with such fraud, or with such knowledge of it as made him responsible for it, and avoided the transfer of the goods to him.

In this connection it may be said that the evidence offered by defendant of a conversation between Cockell and a witness for the defendant was not admissible, as it took place after the transfer of the goods, and was not in the presence or hearing of Buckingham. It was not a part of the *res gestæ*. But, while properly rejecting this testimony, the court permitted Mr. Ambler to testify, against the objection of the defendant, that Cockell told him, after the tranfer, and after the attachments were levied, that Buckingham had agreed, at his request, to loan him $3,000 to pay the attachments on the stock, and when he arrived from Ohio he found that the attachments amounted to more money than that, and that one of the attachments was unjust, as he did not owe the debt as claimed, and that, therefore, he could not take the money of Buckingham, and release the goods. This was open to the same objection as the proposed testimony of Gurney, only more so, and its admission was error.

It was also error to exclude the question put on cross-examination to plaintiff's agent, Thomas, in reference to a conversation had by him in Rutherford's office, when the plaintiff was present, about the first attachment levied on the goods.

I do not think the fact that, after this suit was commenced, the defendant tendered these goods to plaintiff, was admissible on the part of the plaintiff to show bad faith on the part of the defendant in making the levy, nor do I think what the creditors did about the matter was admissible as against him. The writs were valid on their

face, and put in the hands of the defendant for service, and there was no evidence in the case tending to show that defendant was actuated by any malice in the transaction. On the contrary, it would seem, from the record, that he was undertaking simply to perform his duty, as he understood it. But this was permitted to be shown by the plaintiff, and after opening up this matter of tender, and allowing him to testify that he refused such tender, the court would not permit defendant's counsel to ask him why he so refused. If the matter of the tender and refusal was in the case, it was error to exclude this inquiry.

The fact of this tender was introduced in support of a theory raised on the trial that the attending creditors and the sheriff knew that the transfer of the goods was an honest one, and that the attachments were levied for vexatious purposes, and to compel Buckingham to pay Cockell's debts. In support of the same theory, the plaintiff was permitted to introduce affidavits for continuance made by the defendant, his attorneys, and others in the case. This was also error. The only effect and possible purpose of introducing these affidavits was to prejudice the jury against the defendant, and should not have been permitted.

The defendant did not have a fair trial of the real issue in the case. The conduct of the case was such, and the rulings of the court, that the creditors and sheriff were put on trial for fraud; and the question of good faith of the plaintiff and Cockell in the transfer of the goods seems to have been lost sight of and obscured, and this must have affected the verdict in the case.

The court also erred in instructing the jury that it was for the defendant to show, by a fair preponderance of the testimony, that the title to these goods had not passed by a completed sale from Cockell to Buckingham

at the time they were seized under the attachment writs, in order to defeat the plaintiff's action, unless fraud was shown. The plaintiff sued as the owner of these goods, and the burden was upon him to show that, at the time the sheriff levied upon them, the sale or transfer of the goods had been completed, and the title passed. This question was in issue, as well as the matter of fraud, and the error was therefore a vital one.

The judgment of the court below must be reversed, with costs, and a new trial granted.

CHAMPLIN and LONG, JJ., concurred with MORSE, J.

SHERWOOD, C. J., (dissenting). In 1887, Harvey Cockell was engaged in merchandising and lumbering, and carried on a large farm known as the "Golden Farm," in Oceana county, and was largely indebted for the same. He lived at Mears, in said county. The plaintiff resided in Zanesville, Ohio. In April of that year Mr. Cockell met Mr. Buckingham, the plaintiff, at the office of Turpie & Potter, in Columbus, Ohio. This was on April 18, and on the next day the parties made a contract for the exchange of Mr. Buckingham's farm, in Delaware county, Ohio, known as the "Carr Farm," of 178 acres, to Cockell for a stock of goods. The farm was valued at $17,-800, and the contract, which was made by Harvey Cockell and Emma, his wife, of one part, and Mr. Buckingham of the other, is as follows:

"This agreement witnesseth, that James Buckingham, of Zanesville, Ohio, has this day sold to Harvey Cockell and Emma Cockell, of Mears, Michigan, the farm known as the 'Carr Farm,' of one hundred and seventy-eight (178) acres, in Delaware county, Ohio, for the sum of $17,800.

"And the said Harvey Cockell and Emma Cockell agree and bind themselves to pay for said farm in the said sum of $17,800 by the sale and conveyance and delivery of the stock of merchandise now belonging to the said

Harvey Cockell and Emma Cockell in Mears, Oceana county, Michigan, which is hereby acknowledged. Said merchandise to be invoiced at their cost price, except any of said goods that are either moth-eaten or rotten in any way, which are to be invoiced at their true value, if anything.

"It is expressly understood that should the stock of merchandise invoice as aforesaid more than the value of the farm, viz., $17,800, according to said invoice aforesaid, then, and in that event, the said Buckingham agrees to pay said amount over and above said amount in cash. And it is also further understood and agreed that should said stock of merchandise not amount to $17,800, according to said invoice as aforesaid, then, and in that event, the said Harvey Cockell and Emma Cockell agree to pay the said James Buckingham in stock, at a fair cash value, or notes, the amount which said stock of merchandise does lack or fails to amount up to the said sum of $17,800. This agreement made in duplicate, and to be complied with by all parties hereto within twenty days, or sooner, if possible.          JAMES BUCKINGHAM.
                                      "HARVEY COCKELL.
     "Witnesses:                       EMMA COCKELL.
       "J. R. THOMAS.
       "J. H. TURPIE.
     "Dated May 3, 1887."

Mrs. Cockell was not present when the contract was made, but the deed of Buckingham and the contract were made out the same day, but were not delivered, it would appear, until Mr. Cockell returned to Mears, on May 3, when Mrs. Cockell signed the contract, and the papers were exchanged. Before the papers were exchanged, Mr. Buckingham executed to J. R. Thomas, of Ohio, the following power of attorney:

                          "ZANESVILLE, OHIO, May 2, 1887.
"To whom it may concern:
   "I, James Buckingham, of Zanesville, Muskingum county, Ohio, do hereby make, constitute, and appoint J. R. Thomas, of said county and state, my true and lawful attorney in fact, with full power for me, and in my name, to do and perform the matters and things hereinafter specified, to wit: To proceed to Mears, in

Oceana county, in the State of Michigan, and inventory and receive the stock of goods, wares, and merchandise to be sold and transferred to me by Harvey Cockell and wife, as part of the consideration in purchase money for certain land in Delaware county, Ohio, to be conveyed by me to the said Cockell. The said J. R. Thomas shall have full power to do in and about said goods anything that I might or would do if I were present.

"Witness my hand this 2d day of May, 1887.

"JAMES BUCKINGHAM."

Mr. Thomas, who it would appear by the record was a stranger to the transaction up to the time he received his power of attorney from Mr. Buckingham, went to Mears for the plaintiff, and, acting under the power of attorney, delivered the deed of the farm to Mr. Cockell, and Mr. Cockell gave him possession of the goods by giving him the key to the store containing the goods. The next morning the parties commenced taking the inventory of the goods. In about seven days thereafter, and while a large portion of the goods had been placed upon the cars by Mr. Buckingham, the defendant in this suit, and who was sheriff at the time, levied three writs of attachment upon all the property transferred by Mr. Cockell to Mr. Buckingham. These attachments were for sums amounting to over $3,000, and all against the property of Mr. Cockell. The defendant, in justification of his levies, claimed that the pretended sale of the goods was intended to hinder, delay, and defraud the creditors of Mr. Cockell, and was therefore void. Mr. Buckingham, after ascertaining the situation, brought this suit to recover the value of the goods. A trial of the cause was had in the Oceana circuit, before Judge Dickerman, with a jury, which resulted in a verdict for the plaintiff for the sum of $8,781.58. The sheriff's inventory and appraisal of the goods amounted to the sum of $6,075.58. The defendant asks for a review in this Court on error.

Eighteen errors are assigned; two relate to the charge, and the others to the taking of the testimony, and all are argued by the learned counsel for the defendant in their brief.

It appears that Cockell had arranged to get money upon a mortgage of Buckingham upon the farm purchased, and had expected to get $7,000 or $8,000. The evidence tended to show that the farm was worth from $16,500 to $17,000, but, after the attachments were levied, Buckingham refused to loan any to Cockell. Plaintiff's counsel asked Mr. Buckingham when he was upon the stand:

"What did Mr. Cockell tell you about having tried to loan money on the farm?"

This was objected to as incompetent and immaterial. The court overruled the objection. We think this was proper. Certainly the plaintiff had a right to show that Cockell was trying to raise money to pay his debts when charged with trying to cheat and defraud his creditors. The defendant sought to make out his defense by showing the conversations and doings of Mr. Cockell and Mr. Buckingham. All the transactions and all the conversations between these two men, having any tendency to show that their dealings were honest, fair, and in good faith, involved in this suit, were competent and material for the plaintiff; and it would be a strange rule, indeed, that would not allow the plaintiff to show the facts and intentions of the parties to the contract and deed in making the same, when attacked under such a charge as is here made.

The inventory that the parties to the contract made, or caused to be made, was properly received in evidence. It showed, or tended to show, the consideration Buckingham gave for the property. It was entirely proper for the plaintiff to show both the cost price and the

value of the goods. The one was in answer to the attack made upon the contract, and the other was what the plaintiff was entitled to recover, as against this defendant, if he recovered at all.

The testimony of witness Downing, as to Cockell's indebtedness, was properly excluded. There is no testimony that his knowledge extended to what then appeared upon Cockell's books. The books were not present. Neither does it appear that they showed the exact indebtedness; but, if they did, they were the better evidence of the fact, and should have been produced. They were within the reach of a subpœna, and do not appear to have been called for.

The tender back of the goods by defendant, and the plaintiff's refusal to receive the same, were facts of very little significance, and of no importance in the case, and, whether the testimony was erroneously received or not, it is difficult to see how it could have prejudiced the defendant. We think the reason why the plaintiff refused to accept the tender was clearly irrelevant, and was properly rejected.

It was a part of the theory of the plaintiff in the case that neither the defendant, nor the plaintiffs in the attachments under which this defense is sought to be made, ever believed, or had any reason to believe, that Cockell disposed of his property with the intent to defraud his creditors, and that the only object of the attachments was to force an early settlement of the claims; that, while the claims were liable to be sued, there was no reason or excuse for the allegations of fraud contained in the affidavits for the attachments; and that the only reason why the continuances of this case have been resorted to by defendant was to harass and vex the plaintiff in the hope of finally inducing him to settle; that the defendant, and

those whom he represents, never believed they had any claim against the plaintiff, or any right to meddle with the property in question; and for the purpose of establishing these facts, and thereby showing that the defendant knew that the defense he attempts to make is not true, the plaintiff offered in evidence the affidavits made by the defendant to obtain continuances of the case for trial. For this purpose we think they were proper, and the court committed no error in receiving the testimony. These affidavits were made by the defendant and his attorneys, and would not be likely to contain anything prejudicial to the sheriff, who was their client.

The plaintiff was permitted to show that the sheriff defendant was fully indemnified by the plaintiffs in the attachments. We see no objection to this testimony. The sheriff was not only a party, but a witness in the case. He had also testified that the value of the goods was not over $3,000, when their value as placed by the appraisals in the attachment suits returned by him appeared, as we have already seen, to be $6,000 and over. It was competent to show his interest in the suit. The ruling of the circuit judge was right upon this subject.

There is no merit in the thirteenth, fourteenth, and fifteenth assignments of error. In the first of these the witness did not have knowledge upon the subject queried after. In the second, the plaintiff could not be bound by the conversation proposed to be shown between Cockell and witness Gurney. The fraudulent intent of Cockell would not affect Buckingham, if ignorant of it. In the third, the conversation between Cockell and the witness was too late to be admissible. No error was committed in allowing the plaintiff to show what property Cockell had on the Golden farm, and its value at the time of the sale of these goods. If it was proper for the defendant to show that Cockell was insolvent at that time, it was

certainly proper for the plaintiff to show that he was sol-vent, and that defendant's testimony was not true.

Defendant's counsel also claim that the court erred in charging the jury—

"That if you find from a fair preponderance of the evidence in the case that the sale of the attached goods to Buckingham was not completed at the time defendant seized them upon these three attachment writs, and that Buckingham and Cockell at this time understood that the sale between them was not yet complete, then the goods were subject to seizure upon these three attachment writs, and your verdict must be for the defendant, without any reference to the question of fraud, and it will not be necessary for you to consider the question of fraud."

We see nothing objectionable in this charge.

One Turpie had acted as the agent of Mr. Cockell, and the plaintiff's testimony that he never did act as agent for him in this matter of deal was competent, and the court charged the jury upon the subject of the agency of this man, and its effect in the sale, as follows:

"Should the jury find that William Turpie acted as the agent of Buckingham in making the alleged trade, then you are instructed that whatever knowledge he had of Cockell's financial condition, or his intent as to his creditors, would be the knowledge of Buckingham, and Buckingham would be chargeable with whatever knowledge said Turpie may have possessed (in so far as you find that he was acting under the instructions of plaintiff with reference to the attached goods at the time he obtained such knowledge, if he had any, or in so far as he was acting fairly within the line of his duty as agent of the plaintiff in reference to these attached goods at the time he obtained such knowledge, if he had any)."

Certainly there is nothing in this charge of which the defendant could complain. It was more favorable to him than the testimony would warrant. There are no other exceptions to the charge.

We have now gone through with all the exceptions in

74 MICH.—8.

the case, and do not think any of them can be sustained. The judgment should therefore be affirmed.

CAMPBELL, J., concurred with SHERWOOD, C. J.