(123 N. W. 397.)

---

CHARLES W. JOHNSTON v. ELLING K. SPOONHEIM.

Opinion filed November 23, 1909.

**Evidence — Declaration of Party in Interest.**

1. Courts must be governed by the facts and circumstances of each case as considered, and from them alone determine whether the declarations of a party in interest, made in the absence of the litigant, are admissible in evidence.

**Same —. Hearsay — Res Gestae.**

2. As a general rule, statements of parties in interest, made in the absence of the litigant, are incompetent as evidence, unless there exists, in the surrounding circumstances or the nature of the case, some acceptable substitute for the usual test of an oath and cross-examination.

**Evidence — Declaration of Grantor — Good Faith of Deed.**

3. The father of the plaintiff was greatly involved financially, and with his wife deeded to plaintiff a farm. The consideration expressed in the deed was $1. In a contest between a creditor and the son, in which the question of the good faith of the transfer of the farm was involved, a notary was permitted to testify to the effect that the father and mother, when the deed was drawn from them to the son, stated to him, in the absence of the son and of the creditor, that Charles (the son) was dissatisfied with having worked for such a long time and receiving nothing for his labor on the farm, and that unless he got something to show for his work would go west and take up a farm for himself, so to recompense him for his work, and give him something to show for it, they were going to give

him the farm. It was not shown what brought out such statement by the parents. Such statement was not made under circumstances which were a substitute for the usual test of an oath and cross-examination, neither was it a part of the main act or fact, and was made under circumstances which admitted of premeditation and voluntary wariness seeking to manufacture evidence.

*Held,* that its admission was prejudicial error.

Appeal from District Court, Grand Forks county; *Fisk, J.*

Action by Charles W. Johnston against Elling K. Spoonheim and another. Verdict for plaintiff, and 'from an order denying a new trial, defendants appeal.

Reversed.

*George A. Bangs,* for appellants.

*Skulason & Skulason,* for respondent.

SPALDING, J. This is an action brought to recover damages for the conversion of 688 bushels of wheat. On the trial the jury returned a verdict for the plaintiff, assessing his damages at $439.95. The taking of the grain and its value were admitted. The question at issue was its ownership. Defendant took possession of it under a chattel mortgage given by the plaintiff's father and mother on all the grain to be grown on certain described land during the year 1905. This chattel mortgage was given the 12th day of November, 1904. The land was then owned by the plaintiff's father, Samuel C. Johnston. A warranty deed to the land on which the mortgaged crop was grown, namely, the southwest quarter of section 10, township 150, range 53, in Grand Forks county, from Samuel C. Johnston and wife, Fannie, to respondent, was recorded in the office of the register of deeds on the 3d day of January, 1905. This deed bore date December 14, 1904, and the acknowledgment of the grantors was taken on the 31st day of December, 1904, by John Hempstead, a notary public. The consideration named in the deed was $1. It appears from the record that the father of the plaintiff was deeply involved financially, that the plaintiff resided with the father and the mother on the land described, and that subsequent to the execution and delivery of this deed the father deeded the remainder of the land owned by him to the mother in consideraion of love and affection and $1. The deed to the son was made subject to a mortgage amounting to $3,225. The trial was conducted without much reference to the pleadings, and it was contended that the deed from the

father to the plaintiff was made in bad faith and without valuable consideration, for the purpose of defrauding appellant, among others. Considerable evidence .was submitted having a tendency to establish this claim, and the case was tried on the theory that the title to the grain followed the title to the land, and it was assumed that if the transfer to the son was invalid, as against the appellants, the lien of the chattel mortgage attached to the grain taken by them and was enforceable, and, on the other hand, that if the transfer was made in good faith for a valuable consideration, etc., the grain belonged to the son. The charge to the jury rested on this theory. Defendants made a motion for a new trial, which was denied by the trial court; and this appeal is taken.

The record shows some conflict in the evidence as to the good faith of the transaction; but the effect of the verdict, in the absence of error, would be to determine that the deed given by the father and mother to the respondent was given in good, faith, and that the ownership of the crop raised was in the son. Without discussing the subject of voluntary conveyances and their effect as against the creditors of the grantor, because that subject was apparently not considered by the trial court and was not argued in this court, we proceed to consider the errors assigned by the appellant as far as material to a determination of the controversy. Hempstead, a notary, was called as a witness for the plaintiff in rebuttal, and was inquired of as to anything having come to his knowledge at the time he drew the deed for the parents as to why the transfer was made and as to his knowledge of any circumstances connected with the transfer. The inquiry was duly objected to as far as it might refer to any statements made by the vendor, and the objection overruled, whereupon the witness answered as follows: "They stated to me that Charles was dissatisfied with having worked for such a long time and receiving nothing for his labor on the farm, and that he, unless he got something to show for his work, would go West and take up a farm for himself. So to recompense him for his work, and give him something to show for it, they were going to give him this farm. This is the understanding I got." This statement was made, not when the deed was executed and acknowledged, but when it was drawn, December 14, 1904, and, on the one side, it is claimed that its admission was prejudicial error, and, on the other, that it was a part of the res gestæ, and properly received in

—13.

evidence in favor of the plaintiff. This is the most vital question to be determined. We think, in the absence of authorities to the contrary, that most courts would say at once that such a declaration might be self-serving and, if made in the absence of the parties, not under oath, and under the circumstances of this case, it should not be admitted for consideration by the jury; but there are authorities which appear to hold such declarations admissible. In our judgment the best reasoning and the safest authorities to follow are to the effect that they are inadmissible. The books are filled with definitions of "res gestæ" and rules relating to the admissibility of evidence as a part of the "res gestæ." It would be a hopeless task to attempt to classify and apply them. It is nevertheless settled that no fixed or definite rule can be laid down applicable to all cases, and that courts must be governed by the facts and circumstances incident to and surrounding the transaction being considered, and from them alone determine whether the declarations of a party in interest, made in the absence of the litigant, are admissible. 11 Enc. of Evidence, 373; Hall v. State, 48 Ga. 607; Mitchum v. State, 11 Ga. 615; Lund v. Tyngsborough, 9 Cush. (Mass.) 36; Beaver v. Taylor, 1 Wall. 637, 17 L. Ed. 601.

The record fails to disclose what brought out the statement of the parents. We are left in the dark as to whether the notary made inquiry of them to gratify his curiosity, or whether they volunteered the information. Authorities may be produced on all sides of every question which the fertile brains of ingenious counsel have sought to connect with the so-called subject of res gestæ. Heated controversies have been waged in the legal magazines and journals of this country and England over the propriety of admitting declarations as a part of the res gestæ. Mr. Wigmore, in his work on Evidence, directs shafts of most caustic satire and ridicule on the subject, and, in many respects, hardly any two authorities are in harmony relating to it. The term may be said to be made use of largely because the obscurity of its meaning furnishes a refuge for courts and counsel who are unable to locate their ideas under any other subject. Without attempting to tread the maze which the authorities present, a few simple suggestions will furnish our reasons for holding this statement inadmissible. As a general principle, we apprehend that statements of this character are incompetent unless there exists some accept-

able substitute for the usual test of an oath and cross-examination, and that to make such statements admissible the circumstances under which they are made must furnish such substitute. Hupfer v. National Dist. Co., 119 Wis. 417, 96 N. W. 809. Wharton on Evidence, section 259, says: "The sole distinguishing feature is that such acts (statements) must be the automatic and necessary incidents of the litigated act; necessary in this: That they are part of the immediate preparations for and emanations of such act, and are not produced by the calculated policy of the actors, and they must stand in immediate casual relation to the act—a relation not broken by the interposition of voluntary intellectual wariness seeking to manufacture evidence for itself." To permit the admission of such declarations, it is generally conceded that they must form a part of the act itself. Let us inquire how the statement in question comports with these tests. Was it made under circumstances which furnish a substitute for an oath and cross-examination? If it was not, its admission amounts to the submission to the jury of the unsworn statement of a witness made outside the presence and hearing of the party against whom it is sought to use it and without any cross-examination or opportunity to cross-examine.

We can see nothing in the circumstances to lend to the statement or declaration the solemnity incident to a sworn statement. Does it come within the requirement quoted from Wharton on Evidence? Samuel C. Johnston, the grantor and father of the plaintiff, was deeply involved financially. He, together with his wife and their son, the plaintiff, lived on the land described in the chattel mortgage. The parents gave appellant a mortgage on the crop for the ensuing year to secure an indebtedness. Four weeks thereafter they deeded the land to the plaintiff, then 26 years of age. He always resided with the father and worked upon the farm. Their interests appear to have been common. No visible change of position or possession, nor in the manner of conducting the work or the business of the farm, occurred when the deed was given nor during the next season. No express agreement to pay the son for services is shown to have been made, other than the declaration complained of may tend to show. All other land owned by the father was shortly thereafter deeded by him to the mother in consideration of $1 and love and affection. Their chattels were disposed of: They moved west, and about the time the debt to

appellant matured, the son transferred the land to a stranger. In fact, the series of transactions following the giving of the mortgage to appellant carry strong earmarks of fraud. There is much evidence of an almost total disregard of moral and legal obligations to their creditors. In view of these facts, the circumstances, and the conditions, we are unable to say that the statement received in evidence was the automatic and necessary incident of the litigated act, and that it was not produced by the calculated policy of the parents, or the result of intellectual wariness seeking to manufacture evidence for itself, and intended to serve the purpose which it is sought to make it serve in case trouble should come from appellants or other creditors. On the contrary, if the parties were laying the foundation for defrauding their creditors through the disposition of the father's property to the son and the mother, nothing would be more natural than to drop premeditated remarks intended to show the good faith of the transfer. Was the statement which was received a part of the principal act? By "principal act" we mean, not the act of deeding or conveying the real estate, but the good faith of the transaction. It was offered in evidence for the apparent purpose of showing the bona fides of the transfer to the son. The bona fides of the transfer depended upon the nature of the consideration and the object of the parties. This statement, while made with reference to the consideration, was not made contemporaneous or in connection with any consideration or any transfer of consideration, and therefore does not form a part of the main act. It was made in connection with the act of drawing a deed. It is sought to use it in a testimonial character; that is, to place it before the jury for the purpose of impressing its members with the belief that a valuable consideration passed. In other words, the use made of it is, not to show that a statement was made relating to the matter, but to prove by the statement the facts related in the statement. In effect, the parents told the notary that there was a valuable consideration, and the jury is asked to believe that a valuable consideration passed because the parents told the notary so.

We think it clear that it was error to admit the statement in evidence under the circumstances surrounding it. Many authorities lay down the general principle that statements made under such circumstances are properly admitted in evidence. Courts appear

to have adopted the general statement so made as authority for admitting self-serving declarations; but, on careful examination of a large number of the authorities which state the rule in general terms, we find they were made solely with reference to the admission of declarations against the interest of the party making or offering them. We find a great variety of cases where declarations made when a deed was executed or contract entered into, or a similar transaction took place, were admitted; but in nearly every instance, we discover, on examination, that the circumstances have been such as to furnish a substitute for an oath. We may briefly illustrate: Suppose these parents and son had gone before the notary to execute and deliver the deed, and while doing so had engaged in an animated controversy · as to the amount or terms of the consideration; one claiming a greater sum and a longer time than the other. The fact that they engaged in an animated controversy and disagreed on the subject would present, when the testimony of the notary was offered to show what was said on the two sides, an altogether different question, yet it would be testifying as to the statements or declarations of the parties when they appeared before him to execute a deed. Had the father and mother made a statement to the notary as to the consideration to be paid, executed and left the deed with him for delivery on the son delivering him a sum of money or other consideration, then a different question would be presented. So we could go through a long list of circumstances and facts which might naturally arise in connection with such actions which would, when arising, relate to the statements, and in many instances, at the same time, form a part of the main act, and which the circumstances would show could not have been premeditated. There is no end to the variations which might occur in such connection, and the statements be admissible in some instances and inadmissible in others. We cite some authorities sustaining our conclusions.

Mr. Wigmore, in his valuable work on Evidence (volume 3, section 1788), says: "What the hearsay rule forbids is the use of testimonial evidence, i. e., assertions uttered not under cross-examination." The declarations of a vendor as to the purpose he had in view in making the conveyance are self-serving and cannot be used to show the good faith of the parties in making the sale when it is attacked by creditors as fraudulent. Johnson v. Burks, ·

103 Mo. App. 221, 77 S. W. 133; Fisher v. True, 38 Me. 534; Wilson et al. v Sherlock, 36 Me. 295; Colquitt v. Thomas, 8 Ga. 258; Heywood v. Reed, 4 Gray (Mass.) 574; Buckingham v. Tyler, 74 Mich. 101, 41 N. W. 868; Tucker v. Tucker, 32 Mo. 464; Hoover et al. v. Cary, 86 Iowa, 494, 53 N. W. 415. In U. S. v. Mertz, 2 Watts (Pa.) 406, many judgments had been entered against Mertz before he conveyed his real estate to his son in consideration of the alleged indebtedness of the father to the son. The indebtedness consisted in the fact that the son had worked abroad and the father had received his wages; but the work did not amount to the value of the estate, but might have amounted to its value subject to the incumbrances. The question of the good faith or fraud of the transfer from the father to the son was in issue, and, on behalf of the son, the plaintiff, it was offered to prove by the scrivener who wrote the deed that the father told him at the time he was writing it that the object was to secure his son for money which he had earned when working for himself which the father had received. Chief Justice Gibson, in stating the views of the court, says: "That the evidence was erroneously received admits not of an argument. There is an intuitive exception to the competency of exculpatory protestations by a party charged with fraud. His declarations are never admitted to make evidence for himself, when they are not part of the res gestae, and explanatory of a concommitant act, which is here the employment of a scrivener, and entirely irrelevant to the matter in issue. There is a class of cases in which questions of competency have arisen on declarations of the grantor in presence of the parties, and at or immediately preceding the execution of the deed; but, in these, the evidence was offered to establish, not to rebut, a fraud. * * * If such communications were admitted into the jury box, they would never be wanting as a preparatory step to collusion, and their effect would be fatal to justice." In Trimmer v. Trimmer, 13 Hun. (N. Y.) 182, the court held that declarations made by a grantor in a deed as to the terms of payment for the land deeded, and when to be paid, were improperly admitted, and the court says: "The plaintiff's counsel claims that the declaration was a part of the res gestæ. Not so, it was merely a casual conversation between the grantor and the scrivener, having no necessary connection with the act of signing or delivering the deed, and no legitimate tendency to characterize or

qualify the deed, in the face of the written declaration contained in it that the consideration was paid. The res gestæ were the transactions between the parties to the deed, and the words which passed casually between the grantor and the scivener, who in no way represented the grantee, were no part of them. The testimony was clearly inadmissible." In Fisher v. True, 38 Me. 534, it is held that, where the sale of property is alleged to have been fraudulent, the vendee cannot give in evidence the declaration of the vendor in previously offering to sell the same to other persons, nor show that he was advised to purchase it. Johnson v. Burks, 103 Mo. App. 221, 77 S. W. 133, presents a case where a debtor claimed to be a good faith purchaser of a lot from her father, holding under a deed expressing a consideration of natural love and affection and the sum of $10, and it was contended that testimony that the father had told the witnesses the object and purpose he had in view in making the deal should have been admitted. The court says these declarations of the father of the defendant were not against his interest at the time they were made, but were in their very nature self-serving, and that it did not know of any authority that gave countenance to the notion that the declarations of the grantor are admissible in evidence in favor of a voluntary or fraudulent grantee to show a valuable consideration, where the deed itself recites the consideration to be that of love and affection and a mere nominal consideration. We think the statement considered and held inadmissible in Balding v. Andrews et al., 12 N. D. 267, 96 N. W. 305, was less clearly so than the one in the case at bar.

A number of highly respectable authorities hold that statements of this nature cannot be received in evidence where the parties making them are accessible as witnesses, except for the purpose of corroborating their testimony. It is not necessary to pass upon this rule; but it may be added that the record discloses that the father was present in court, at least the day before Hempstead testified, and that the mother's testimony was taken by deposition. The deposition of the mother covered the very subject which Hempstead's testimony related to, namely, the consideration for the deed, and was in conflict with the statement made to Hempstead. She testified that: "There was no other reason other than to give him the land at that time. We gave it to him for the reason that we wanted to give him something that

he could call his own. There was no other consideration." In view of the nature of the record in this case, the admission of the testimony of Hempstead as to the statement of the parents when the deed was drawn constitutes reversible error. Some other questions are discussed in appellant's brief; but they are either without merit, or will not arise on a retrial of the action, and need not be noticed.

The order appealed from is reversed, and a new trial granted. All concur, except MORGAN, C. J., dissenting.

FISK, J., being disqualified, HON. C. A. POLLOCK, Judge of the Third Judicial District, acted in his place.

MORGAN, C. J. (dissenting.) I think that the evidence of the notary public was admissible as part of the res gestæ, and explanatory of the giving of the deed. I do not find any particular conflict as to the rule applicable to the admission of declaration made at the time of the doing of the act. The difficulty or disagreement occurs in applying the rule to the declarations in each case. Much diversity exists in applying the rule as to declarations made or as to acts done under the same or similar circumstances. The rule in civil cases is clearly stated in Elliott on Evidence, an excellent and practical treatise on that subject, as follows: "As already shown, the term 'res gestæ' is applied somewhat indefinitely to various classes of cases; but, generally speaking, the doctrine involves the admissibiity of the principal fact, and the propriety of characterizing or explaining it, and the connection of the declaration with it so as to illustrate, elucidate, or explain it. A typical case therefore is that in which the act or conduct in question is equivocal and in itself has no definite and certain legal significance, without showing the entire transaction or circumstances, but which can be made definite, characterized or given a legal significance, by words accompanying the act or conduct, and so connected with it as to constitute' a part of the transaction. The words in such a case are used and admitted as characterizing or elucidating the principal fact, and not as evidence of the truth of the assertion they make as an independent matter." Volume 1, section 522. Another author lays down the rule in the following language: "In questions of fraud or bona fides, an adequate judgment can in general only be formed by having a perfect view of the whole transaction, and this includes the conversation which forms a part of it. The language which is

used on any occasion forms a part of the res gestæ. The declarations and acts of the debtor made before the transfer and contemporaneous with it are admissible. They are admissible evidence in favor of the grantee as well as of the creditor. The acts or declarations of the grantee which accompany the transfer stand on the same footing as those of the debtor. So far as acts and declarations of the parties form a part of and assist in giving character to the transaction, they constitute a part of the res gestæ, and are competent evidence." Bump on Fraudulent Conveyances (4th Ed.) section 593.

If the declarations in this case had been made after the transaction had been completed, they would have been hearsay, and not admissible; but there are some exceptions to the rule in regard to such declarations, and under such exceptions they are not deemed to be hearsay evidence. If the declarations are made as part of the res gestæ, they are not hearsay, although they were made in the absence of one of the parties to the litigation. Declarations made while the transactions are in process of completion are admissible whether they are in favor of, or adverse to, the interests of the declarants. When the statement in this case was made, the agreement, if any had ever been made, had not been completed. If any promises had previously been made, they were still unexecuted. The statement was therefore explanatory, to a certain extent, of the contemplated execution of the deed. It was not therefore a narration of a past event or agreement, but pertained to the act which was then being done. It tended to characterize the act of executing the deed. I do not disagree with much that is stated in the majority opinion. I reach a different conclusion on the application of the principles therein stated to the declarations in this case. I think that the declaration was made contemporaneously with the making of the deed, and become, in effect, a part of the transaction. If that is true, the declarations were admissible, although they might have been, in reality, self-serving declarations and intended to bolster up a fraudulent scheme. That fact would go to the weight, and not to the competency, of the evidence.

I fail to see that it is material whether the principal, or main fact—the res gestæ—be deemed the drawing, signing, or acknowledging of the deed, or the good faith of the consideration, as declared in the majority opinion. Whether the good faith of the act

of delivering the deed or the good faith of the consideration be the res gestæ, the grantors declared, in reference thereto, that the deed was being drawn for a valuable consideration, and this declaration was made before it became a closed or past transaction. It was the validity and good faith of the deed that was being contested. The deed was in evidence, and expressed equivocally only, what the consideration was. To show fully the nature of the transaction, this declaration was competent, as explanatory thereof and as a part thereof, having been made while the deed was being executed. In attempting to make a rule that it must appear that the declarations were made under such solemn circumstances that a substitute for an oath and for cross-examination is furnished, the opinion would bar the admission of all such declarations in contract matters. In contract matters such declarations are admissible if made as a part of the transaction and while it was going on, and it is the presence of this fact that is deemed of sufficient significance as part of the litigated act to render the declarations admissible without having been made under oath or subject to cross-examination. The following authorities are in point as to the competency of such evidence: 24 Am. & Eng. Enc. Law (2d Ed.) 662, and cases cited; Kenney v. Phillipy, 91 Ind. 511; Bushnell v. Wood, 85 Ill. 88; Kent v. Harcourt, 33 Barb. (N. Y.) 491; Jones on Evidence, section 236; Elliott v. Stoddard, 98 Mass. 145; Bergman v. Twilight, 10 Or. 337; Boyden v. Moore, 11 Pick. (Mass.) 363; Hart v. Newton, 48 Mich. 401, 12 N. W. 508; Woolery v. Woolery, 29 Ind. 249, 95 Am. Dec. 629.

It is apparent to me that the majority opinion is grounded upon a notion that the judgment appealed from is based on a fraudulent scheme. The fact that the trial court refused to set the verdict aside on a motion for a new trial ought to set that notion at rest. If the trial judge erred, however, in refusing to set the verdict aside, the judgment should be reversed on that ground, and not by refinements in attempting to avoid a plain and well-established rule of evidence.

The judgment should be affirmed.