## RAUH v. MORRIS *et al.*

No. 3031.   Opinion Filed January 13, 1914.

(137 Pac. 1174.)

1.   COURTS—County Courts—Removal of Causes—Waiver of Notice. Section 2 of the act of the Legislature entitled "An act to provide for holding sessions of the county court in Shattuck, Ellis county," approved February 23, 1910 (Sess. Laws 1910, p. 28), requires that the party to an action, who desires to remove a cause from the county court pending at either of said places where the court is held in said county to the county court at the other place, shall give notice to the opposite party of his motion for such transfer; but where the opposite party is present in court at the time such a motion is presented and has an opportunity to be heard and participates in the hearing on said motion, without objections thereto on the ground that no notice had been served upon him, will be held to have waived such notice.

2. **FRAUDULENT CONVEYANCES—Right to Attack—Subsequent Creditor.** It is the general rule that a subsequent creditor, who extends credit or acquires his claim after he has due notice, either actual or constructive, of an alleged fraudulent conveyance, cannot attack such conveyance on the ground that it was made in fraud of creditors.

3. **SALES—Bill of Sale—Unauthorized Recording—Notice.** In the absence of any statute authorizing the filing and recording of bills of sale conveying personal property, the filing and recording of such an instrument in the office of the register of deeds does not give constructive notice of the conveyance of such property.

4. **EVIDENCE—Declarations of Seller.** Anything done or said by a vendor before or at the time of an alleged fraudulent sale, showing he intends thereby to defeat his creditors, is admissible as to such intent; and it is not necessary to its admission for that purpose that it should have been said or done in the presence of the vendee.

5. **EVIDENCE—Hearsay—Ownership of Property.** Where one of the questions involved is whether the property in controversy belongs to the plaintiff or her husband, it is error to permit a witness to testify to statements made by plaintiff's minor son, in her absence, that such property belonged to plaintiff's husband.

(Syllabus by the Court.)

*Error from County Court, Ellis County;*
*A. L. Squire, Judge.*

Action in replevin by Eva Rauh against Perry J. Morris and Henry Gottman. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*W. H. Springfield,* for plaintiff in error.

*C. B. Leedy, J. G. Aubuchon,* and *Perry J. Morris,* for defendants in error.

HAYES, C. J. This is an action in replevin, brought originally in the county court of Ellis county by plaintiff in error against defendants in error, Perry J. Morris and Henry Gottman, the latter a constable in said county, in which plaintiff in error seeks to recover possession of certain chattels, consisting of one farm wagon, one spring wagon, and 400 bushels of kaffir corn. The suit was filed in the county court of said county originally at Arnett. Upon motion of defendants in error, the cause was transferred from the county court at Arnett to the county

court at Shattuck in the same county.   This act of the court transferring the cause is complained of in one of the assignments of error.

Section 2 of an act of the Legislature, entitled "An act to provide for holding sessions of the county court in Shattuck, in Ellis county," approved February 23, 1910 (Sess. Laws 1910, p. 28), provides that upon application presented after reasonable notice, any action or matter pending in the county court, either at Arnett or Shattuck, shall be transferred to or remain in the county court held in said county nearest the residence of defendant in the action.   Plaintiff in error contends that the order complained of was made without notice to her.   The record is silent as to whether any notice was given, but the record does disclose that plaintiff was present by counsel and in person at the time the application for the transfer was made, and objected to the transfer upon other grounds than that of failure to give notice. So far as the record discloses, no objections whatever were made in the trial court for want of notice; and, under these circumstances, it must be held that since plaintiff was present and had an opportunity to be heard and did participate at the hearing upon the application for the transfer, which is the very purpose of the notice, she waived any formal service of notice upon her before the presentation of the application.

The property in controversy was seized by defendant Gottman as constable under a writ of attachment issued by one of the justice courts of Ellis county to enforce the payment of a judgment in favor of defendant Morris against Chris Rauh, the husband of plaintiff.   Plaintiff, in her petition, seeks to recover the property upon two grounds:   First, that she is the absolute owner thereof; and, second, that if she is not the owner thereof, and her husband be the owner thereof, the property is exempt from execution to the family under the statute of this state.

The evidence on the part of plaintiff tends to establish that, at the time she married Chris Rauh, she brought to him in money $500 and certain other personal property, the value of which is not made clear by the record; that they lived together for a great many years as husband and wife; that she is a very in-

dustrious, hard-working woman; that for many years the property of the family was held and controlled by her husband, Chris Rauh; that she contributed very much toward the acquirement of said property by her labor. During this time the evidence tends to establish that the responsibility and care of the home and the farm and the management of its affairs devolved largely, if not entirely, upon her; that her husband was engaged in trading, principally in buying, selling, and shipping cattle, in which business he appears generally to have lost money until ultimately the financial affairs of the family became in very bad condition. Plaintiff became uneasy that all their property was going to be lost by the bad management of her husband and insisted that he convey to her all the property he then had, in consideration of what she had contributed in money and services toward the acquirement of said property, and in order that she might so manage it as to retain a home for herself and children. Her husband, with much reluctance, consented to and did, during the first part of the year 1910, convey to her all the real estate then owned by him and certain personal property, including the property in controversy. For the personal property he executed to plaintiff a bill of sale, which was filed for record with the register of deeds of the county. At the time these conveyances were executed by her husband to plaintiff, he owed considerable debts, most or all of which were secured by mortgages upon the real estate or other property conveyed by him to plaintiff. As a part of such conveyance, she agreed to assume and pay all of said indebtedness. Defendant Morris was not, however, at that time a creditor of plaintiff's husband, Chris Rauh, but the debt upon which he secured judgment, to enforce which the attachment involved herein was issued, was contracted by Chris Rauh with defendant Morris subsequently. It is the contention of defendants that the conveyance by Chris Rauh of the property in controversy to his wife was: First, in fraud of his creditors; and, second, that it was a sham conveyance, and that in fact the property was never transferred and never intended to be transferred to plaintiff. The trial resulted in a verdict and judgment in favor of defendants.

By one of the instructions of which plaintiff complains, the jury was instructed that the filing of said bill of sale by plaintiff was sufficient notice to bind all persons "who had actual knowledge of said bill of sale." The general rule is that a conveyance cannot be attacked on the ground of fraud by a subsequent creditor, or one whose claim is acquired after due notice of the conveyance, either actual or constructive. *State Bank of Chase v. Chatten,* 69 Kan. 435, 77 Pac. 96; *Sheppard et al. v. Thomas,* 24 Kan. 780; 20 Cyc. 427.

It is the contention of plaintiff that the filing for record of the bill of sale received by her from her husband, conveying the property in controversy, was constructive notice of such conveyance to defendant Morris and, if fraudulent, cannot be attacked by him upon that ground, and that the instruction complained of erroneously stated the law, because it required that defendant have actual knowledge of the bill of sale before the conveyance would be valid as to him. But constructive notice of the contents of an instrument can be given by filing or recording the instrument only when there is some statute authorizing such instrument to be filed or recorded and declaring the effect of such acts to be constructive notice of its contents. The unauthorized filing of an instrument has not the effect to convey constructive notice. *Lewis v. Johnson,* 68 Tex. 448, 4 S. W. 644; *Quackenbush v. Reed,* 102 Cal. 493, 37 Pac. 755; *Betser v. Rankin,* 77 Ill. 289; *Kelley v. Vandiver,* 75 Mo. App. 435. No statute has been called to our attention, and we are aware of no statute in this jurisdiction, authorizing the filing and recording of bills of sale or making such acts constructive notice of their contents.

Over plaintiff's objection, witnesses were permitted to testify to statements made by Chris Rauh, plaintiff's husband, in the absence of plaintiff, just before or at the time he executed the bill of sale, tending to show that his purpose in making the conveyance was to defraud his creditors. The court committed no error in permitting this evidence to be introduced. One of defendants' defenses is that the sale and conveyance of the property to plaintiff by her husband was for the purpose of hindering, delaying, and defrauding his creditors. One of the elements

of this defense was the fraudulent intent of her husband. The other element is that plaintiff was not a purchaser for a valuable consideration, or that she knew or had reason to believe that the vendor was acting in bad faith toward his creditors. It was competent to show the statements of plaintiff's husband, the vendor, at the time he executed the conveyance for the purpose of establishing his intent.

"Anything said or done by a vendor before or at the time of the alleged fraudulent sale, showing his intent thereby to defraud his creditors, is admissible as evidence as to such intent, and it is not necessary to its admission for that purpose that it should have been said or done in the presence of the vendee." (*Buckingham v. Tyler,* 74 Mich. 101, 41 N. W. 868; *Snyder v. Free,* 114 Mo. 360, 21 S. W. 847; *Burlington Nat. Bank v. Beard et al.,* 55 Kan. 773, 42 Pac. 320; 20 Cyc. 768.)

Over the objection of plaintiff, witnesses were permitted to testify to the statements of plaintiff's minor son, made in her absence, as to who was the owner of the property in controversy. This evidence is to the effect that the minor son, at or about the time the attachment was levied upon the property involved, stated to different persons that said property was the property of his father, Chris Rauh, and that he pointed out the property to the officers as his father's property. That this evidence is mere hearsay evidence and was incompetent appears elementary. The minor son was in no way a party to any of the transactions between his father and mother involved, and was the agent of neither of them. That this evidence was prejudicial becomes obvious when it is observed that one of defendants' contentions is that there was in fact never any settlement between plaintiff and her husband, Chris Rauh, and conveyance of the property in controversy, but that the bill of sale was executed as a mere sham; and, to support this contention, the only evidence referred to and relied upon in the brief of counsel for defendants is the statements of this son, made in the absence of plaintiff to third parties relative to the ownership of the property.

Other questions are discussed in the brief of counsel for plaintiff, but they are either not presented in sufficient conform-

ity with the rules of this court to entitle them to consideration, or they are without sufficient merit to require discussion.

For the admission of the incompetent testimony, the judgment of the trial court is reversed, and the cause remanded.

All the Justices concur.