**GRAND LODGE OF OKLAHOMA, INDEPENDENT ORDER OF ODD FELLOWS, a fraternal corporation; and The Woodmen of the World Life Insurance Society, a corporation, Plaintiffs in Error,**

v.

**Mary C. WEBB; Eldon Webb, individually and as Administrator of the Estate of W. A. Webb, deceased; Independent School District No. 15 of Stephens County, Oklahoma, Defendants in Error.**

No. 37278.

Supreme Court of Oklahoma.

Dec. 26, 1956.

Rehearing Denied Jan. 29, 1957.

Murphy & Firestone, Kingfisher, M. B. Cope, El Reno, D. P. Parker, Buffalo, for plaintiffs in error Grand Lodge of Oklahoma, Independent Order of Odd Fellows.

Jerome Sullivan, Duncan, for plaintiffs in error Woodmen of the World Life Ins. Soc.

Harley Van Cleave, Raymon B. Thomas, Charles C. Liebler, Tulsa, R. H. Brown, Duncan, for defendants in error.

PER CURIAM.

This action was initiated January 17, 1952, by Independent School District No.

15 of Stephens County, Oklahoma, to quiet its title to one acre of upland, suitable only for pasture but under which oil has been discovered, in the Northwest corner of the NW/4 of the NW/4 of the NW/4 of Section 3, Township 2 South, Range 4 West, Stephens County. Some of the parties defendant, the widow and the administrator of the estate of the deceased owner of some adjacent property, filed a cross-petition asserting title to the property in their decedent by adverse possession. These cross-petitioners caused the plaintiffs in error to be made parties defendant and likewise asserted and alleged prescriptive title as against these parties. Prior to trial the school district and the cross-petitioners settled their respective claims by agreement, and the cause proceeded to trial without a jury upon the issues between the cross-petitioners and the plaintiffs in error.

On June 16, 1907 the owners of the W/2 of the NW/4 of the NW/4 of the above described section conveyed:

> "In the West ½ of N.W. ¼ of the N.W. ¼ of Sec. 3 Township 2 S. R 4 West containing one acre of land in the N.W. corner of this Ten. Beginning at the N.W. corner running 70 yards south thence 70 yds East thence 70 yds North Thence West to point of beginning
> if this School House is not built this land reverts back to John W. Tindall and wife. This land is owned jointly by the I.O.O.F. Trustees and Managers of W.O.W. & School Trustees and The School."

Shortly thereafter, the new owners constructed a two-story frame building on this acre to be used as a school and as a meeting place for the local lodges of the defendants. Thereafter, on August 21, 1907, the owners conveyed the remainder of the W/2 of this section " * * * Except one acre, * * * 70 Yds, square, in the North-west corner of the North Ten, sold to the school, I.O.O.F., and W.O.W. * * *" to Norton. In December, 1915 Norton and his wife conveyed to S. A. Rice certain property described as:

> "Beginning 315 feet South from North-west corner of NW¼ of NW¼ of the NW¼ Section 3, Two South Range 4 West, Thence S. 187 yards, Thence E 220 yards, Thence N. 258⅔ yards, Thence W. 55 Yards, Thence S. 105 Yards, Thence W. 133 Feet, Thence N. 100 feet, Thence W. 120⅔ yards to point of beginning, all in Section 3, twp. two south range 4 west containing 9 acres more or less, * * *"

In the previous March Norton had also conveyed a 105-foot strip bordering the school acre on the south and east by a deed which was not recorded. Finally, in November, 1917 Rice conveyed the property acquired by him from Norton to the deceased, W. A. Webb, and used the same description in his deed as that contained in the deed from Norton to him. By this last instrument, therefore, cross-petitioners' decedent became the owner of record of property adjacent but not contiguous to the school acre here in controversy.

The co-tenants of this one acre jointly used the building thereon for several years following its construction. However, some time prior to 1925 the two local lodges of defendants ceased to hold meetings, and it is uncontradicted that these local lodges no longer exist and that their property now belongs to the defendants. In 1925 the school district purchased other property, built a new school, and ceased to use this one acre. They also sold the building. From 1925 until 1933 this acre was open range. In 1933 W. A. Webb constructed a 4-wire fence around the defendants' property, thereby enclosing it under one fence with the property which he already owned. The acre has been within the cross-petitioners' enclosure ever since. The evidence was that Webb had the exclusive use and control of this one acre since 1933.

The only material conflict in the evidence concerns the nature of the possession taken by Webb, who died in October, 1950. The administrator, the decedent's son, testified that he helped his father construct the fence around this acre in 1933 and that his

father told him on that occasion that the property reverted to him when it ceased to be used for a school. Likewise, a community neighbor testified without objection that Mr. Webb told him on one occasion that "he would own it (the acre) if nobody else didn't keep it long." In 1949 Mr. and Mrs. Webb executed an oil and gas lease on this property. On the other hand, Mrs. Webb testified that "we knew it was not ours." She also stated that the lease was given "to clear up the oil title to it for us," and that they "didn't say we owned it." The cross-petitioners, or their decedent, have not assessed this property, nor have they paid any ad valorem taxes thereon.

From the court's judgment quieting title to this one acre in the cross-petitioners upon the basis of their adverse possession, the defendants have appealed. They argue that the court could not approve the settlement between the school district and the Webbs; that prescriptive title could not be acquired against the school district and thus, because they were co-tenants, not against them; that the court erred in admitting certain evidence; and, that the judgment is not supported by the evidence.

■ The defendants cannot complain about the court's action in approving the settlement made between the school district and cross-petitioners. This part of the decree did not affect any property other than the undivided one-third of the acre owned by the school district. It did not involve the defendants or their respective interest in the property. Clinton v. Clinton, 187 Okl. 144, 101 P.2d 609. They are not aggrieved. Corley v. French, 146 Okl. 29, 293 P. 177.

■ The defendants' second proposition, although novel, is without merit. They insist that since the school district is not barred by limitations, Merritt Independent School Dist. No. 2 of Beckham County v. Jones, 207 Okl. 376, 249 P.2d 1007, 1008, its co-tenants are likewise favored. Their theory is that the school district has always been in constructive possession since title cannot be acquired

from it by prescription, and that the possession of one tenant in common is the possession of all, thus there could have been no exclusive possession in the cross-petitioners' decedent. This argument misconstrues the rule. Title by adverse possession cannot be acquired to school property for the reason that the statute of limitations does not run against the school district and not because it is impossible to hold possession against the school sufficiently adverse to create an action for possession. This was pointed out in the Merritt case, supra, when we noted that title by adverse possession could be acquired against all "except those excepted from the operation of the statute of limitations." There is no such period of limitation insofar as the school district is concerned. This rule in no manner alters the character of the actual possession held by Webb since 1933. If this possession was "adverse", it was nonetheless so because a school district was one of the co-tenants. It is no help to the defendants that the limitations statute is inapplicable to the school district. Its interest in the property was separate from that of the defendants except insofar as possession of one co-tenant was possession for all. Clinton v. Clinton, supra. Here, none of the co-tenants had possession. The theory of constructive possession has no application to this situation. Thus, it has been held that property of one tenant in common may be acquired by a third person by adverse possession even though the other co-tenant is the state or is under a disability that tolls the statute of limitations thereby precluding the acquisition of title to such undivided interest. Garrett v. Weinberg, 48 S.C. 28, 26 S.E. 3; Rupley v. Fraser, 132 Minn. 311, 156 N.W. 350; Town of Hoxie v. Gibson, 150 Ark. 432, 234 S.W. 490; Fear v. Barwise, 93 Kan. 131, 143 P. 505.

■ We are also convinced that the court did not err in admitting the testimony of the administrator relating the statement made by the deceased at the time he was constructing the fence. This

**344**

testimony was challenged as being hearsay and the administrator was also challenged as being incompetent as a witness by virtue of the "dead man's statute." 12 O.S.1951 § 384. The testimony to which objection was made related the decedent's statement while in the performance of the equivocal act of fencing this unenclosed acre. It was not offered to prove the truth of the fact asserted (i. e., that the title did revert to Webb) but to show the nature of the claim asserted by the deceased as giving meaning to his act of taking possession of the property. This is not hearsay evidence. The evidence is what Wigmore has called an "Utterance forming a verbal part of an act." Rauh v. Morris, 40 Okl. 288, 137 P. 1174; Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706; Wigmore, Code of Evidence, 3rd Ed., Rule 171, Art. 2, p. 329. The administrator was not incompetent to so testify, for he was testifying on behalf of the estate and not as an adverse party. Barry v. Hubbard, 195 Okl. 112, 155 P.2d 512.

 The remaining question concerns the sufficiency of the evidence to support a determination that cross petitioners' decedent had acquired title by adverse possession. The evidence was conclusive that Mr. Webb held actual, visible, continuous and exclusive possession of this acre from 1933 until his death in 1950. But, lacking color of title to prevail, his possession must have been under a claim of right, hostile to the owners. It must have been his intention to appropriate and use the land as his own to the exclusion of all others. This was the ultimate fact upon which the evidence was conflicting. Some testimony, i. e., Mrs. Webb's statements and the failure to pay taxes, tended to prove the lack of the necessary hostility. On the other hand, the deceased's statement, fencing and using the property, executing an oil and gas lease, all tended to prove the requisite claim of right. We cannot say that the trial court's finding was against the clear weight of this evidence.

The judgment is affirmed.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner James H. Nease, and approved by Commissioners J. W. Crawford and Jean R. Reed, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter upon report and consideration in conference the foregoing opinion was adopted by the Court.